(No. 48886.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. JERRY KING, Appellant.

*Opinion filed May 20, 1977.*

554

James J. Doherty, Public Defender, of Chicago (Leonard V. Solomon and Andrew J. Kleczek, Assistant Public Defenders, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Laurence J. Bolon and Larry L. Thompson, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE MORAN delivered the opinion of the court:

Following a jury trial, defendant, Jerry King, was convicted of rape and burglary with intent to commit rape. He was sentenced by the circuit court of Cook County to concurrent terms of 10 to 30 years plus 5 years' parole on the rape conviction, and 6 to 18 years plus 3 years' parole on the burglary conviction. The appellate court, by order (58 Ill. 2d R. 23), affirmed defendant's convictions and sentences (38 Ill. App. 3d 1078). This court granted defendant leave to appeal.

The incident in question occurred at approximately 5:30 a.m. on March 7, 1974, in the second-floor apartment of a building where the defendant had formerly resided. The complaining witness informed the police that defendant was the man who broke through her kitchen door and assaulted her. Later that morning, defendant was arrested, taken into custody, and remained incarcerated until trial. At a hearing on March 27, defendant was represented by the public defender, and, following a finding of probable cause, he was bound over to the grand jury. An indictment was returned on May 27, charging defendant with rape and burglary with intent to commit rape. On June 17, 1974, defendant was arraigned, and the public defender was appointed to represent him. At the arraignment, a plea of not guilty was entered and defendant personally demanded trial. The State filed a motion for discovery but no motion was filed by the defense. Trial was set for June 24.

When the case was called for trial, the defendant again personally answered "ready" and demanded a jury trial, but his counsel objected and moved for a continuance. Counsel urged that despite his client's answer he was not prepared for trial and had so advised his client. He stated a continuance was needed to complete discovery and to locate "some witnesses." Counsel did not, however, disclose the identity of such witnesses, what efforts had

been made to locate them, or what the substance of their testimony would be. The court responded by noting that the defendant had answered ready for trial twice and was entitled to a speedy trial. The court then ordered the State to turn everything it had in its files over to defense counsel.

A short recess was taken and, during a conference in chambers, defendant's counsel again argued that a continuance should be granted as the case had "only been up here for one week." The court indicated that it had postponed another trial in order to accommodate defendant's demand, and that it had admonished defendant when he demanded trial a week earlier that, if the State had its witnesses and was prepared to go to trial, no continuance would be granted. The court then denied defense counsel's motion for a continuance. Before returning to the courtroom, the defendant stated to the court, "I have a witness who I would like in this building," but that witness was never identified.

At trial, defendant was represented by two assistant public defenders. Following the close of the State's evidence, the defendant took the stand and testified that he had lived with the complaining witness prior to March 7, 1974, despite her earlier testimony to the contrary. He also stated that on the morning of March 7, at approximately 3 a.m. he and a friend, Lawrence Render, were helping another friend, Chris Harper, move a television set to Harper's apartment. According to defendant's testimony, Render left Harper's apartment when the trio was finished, but he (defendant) spent the remainder of the night in the apartment with Harper, awaking shortly after 10 a.m. Render's testimony corroborated the defendant's, but Harper did not testify at trial. A defense investigator stated that he had attempted to locate Harper at his reported place of work, but did not find him. On cross-examination, the investigator indicated this effort to

locate the alibi witness was made only four days before trial.

Initially, defendant contends that the trial court committed reversible error in refusing counsel additional time to locate witnesses. Granting additional time is a discretionary matter, the abuse of which depends on the facts and circumstances existing at the time of the request. (*People v. Solomon* (1962), 24 Ill. 2d 586, 589, *cert. denied* (1962), 371 U.S. 853, 9 L. Ed. 2d 87, 83 S. Ct. 94; *People v. Stokes* (1960), 18 Ill. 2d 371, 374-75.) Consequently, we evaluate the trial court's decision in light of the circumstances which existed at the time of the request.

Although counsel asked for additional time to locate "some witnesses," the trial court was not presented with any facts to indicate their identity, the materiality of their testimony, or the reasonable likelihood that they could be found. Counsel had had a week to locate these undisclosed witnesses, yet, at the time of the request, there was no showing of what efforts, if any, had been made to locate them. Counsel's attempt to locate the alibi witness was not presented to the court until during trial. Defendant, despite counsel's advice, informed the court that he was ready to proceed and demanded a jury trial. It also appears defendant had demanded a trial a week earlier. Considering the lack of information presented to the trial court at the time of the request and the fact that defense counsel had had a week to locate the witnesses, plus defendant's insistence on proceeding to trial, we hold that the trial court did not abuse its discretion in denying counsel's request for a continuance.

Following trial, counsel filed a section 72 petition alleging that certain of the complaining witness' children were discovered only after trial and, if available at trial, would have corroborated defendant's testimony that he had lived with them and their mother. Defendant now asserts he was deprived of the effective assistance of

counsel for, had counsel had additional time to prepare for trial and complete discovery, the children's testimony would have been available at trial. The very fact that defendant testified he had lived with the complaining witness and her children makes untenable his later assertion that the favorable testimony of the children was discovered only after trial. Further, defendant was not prejudiced by the lack of the testimony which the children would have purportedly given since it would have been merely cumulative. The record indicates that at least one State witness and two defense witnesses, in addition to the defendant, testified that he had lived with the complaining witness. *People v. Edwards* (1973), 55 Ill. 2d 25, 33-34, *cert. denied* (1974), 415 U.S. 928, 39 L. Ed. 2d 486, 94 S. Ct. 1438; *People v. DeMary* (1967), 37 Ill. 2d 364, 370.

It is also asserted that defense counsel did not have access to the transcripts of the preliminary hearing or grand jury proceedings and that they would have assisted them in preparing for trial and impeaching witnesses. The record shows that counsel did, in fact, have access to the transcript of the preliminary hearing, for it was used to impeach the complaining witness at trial. Counsel also had complete access to the State's files at trial. There is no indication in the record that the grand jury transcript was not included. Defendant's trial was not complex, and counsel conducted a vigorous defense, evidenced by their probing cross-examination of the State's witnesses and by the presentation of evidence. The public defender's office represented defendant at the preliminary hearing, at which the complaining witness had testified. Counsel, therefore, should have been well acquainted with the State's case prior to trial. Defendant was not denied the effective assistance of counsel. See *People v. Lewis* (1975), 60 Ill. 2d 152, 157-58.

Defendant contends the trial court erred when it refused to permit his counsel to testify and explain the investigator's late attempt to locate the alibi witness.

Defendant asserts counsel would have explained to the jury that no effort was earlier made to locate the alibi witness because counsel was appointed to represent defendant only a week before trial, and that this explanation would have minimized the jury's speculation that the alibi defense was fictional. He states that the error was compounded by the State's Attorney's closing remarks, which included a comment regarding defendant's failure to search for the alibi witness until shortly before trial.

Defendant's assessment of the impact of the investigator's testimony on the jury is mere conjecture. Further, the trial court has wide discretion in refusing to permit attorneys to testify at a trial wherein they also serve as advocates. (*People v. Gendron* (1968), 41 Ill. 2d 351, 357-59, *cert. denied* (1969), 396 U.S. 889, 24 L. Ed. 2d 164, 90 S. Ct. 179.) This is especially so where, as here, another witness was available to testify. Defendant could have testified, as easily as counsel, regarding their initial meeting and discussion regarding the location of witnesses. The State's Attorney's comment concerning the defendant's attempt to locate the alibi witness was proper inasmuch as the defendant raised the issue through the testimony of the investigator. *People v. Swift* (1925), 319 Ill. 359, 365-66.

Defendant also complains that he was prejudiced by the State's Attorney's closing remarks to the jury which indicated that, contrary to defendant's testimony, defendant never informed the police of his alibi. Defendant, however, failed to object to these remarks during argument, and the error is, therefore, deemed waived. (*People v. Edwards* (1973), 55 Ill. 2d 25, 35, *cert. denied* (1974), 415 U.S. 928, 39 L. Ed. 2d 486, 94 S. Ct. 1438.) Moreover, the error did not substantially prejudice the defendant, for both the court and counsel admonished the jury that counsel's remarks did not constitute evidence.

Finally, defendant contends that his conviction for burglary must be reversed as it was motivated by his intent

to commit the rape. He argues, citing *People v. Williams* (1975), 60 Ill. 2d 1, that, where the offenses are not independently motivated, only the conviction for the most serious of the offenses can stand. The State, on the other hand, urges us to reconsider the soundness of the "independent motivation" test, arguing that it has no statutory support and has engendered a multitude of appeals reaching inconsistent and illogical results.

Prior to 1958, this court consistently held that a defendant was not prejudiced by multiple convictions and concurrent sentences for offenses committed during the same transaction. (*People v. Stingley* (1953), 414 Ill. 398, 403-05, *cert. denied* (1953), 345 U.S. 959, 97 L. Ed. 1379, 73 S. Ct. 945; *People v. Quidd* (1949), 403 Ill. 15, 20-21; *People v. Griffin* (1949), 402 Ill. 247, 248-49; *People v. McMullen* (1948), 400 Ill. 253, 254-57, *cert. denied* (1948), 335 U.S. 831, 93 L. Ed. 384, 69 S. Ct. 16.) This position was subsequently reversed in *People v. Schlenger* (1958), 13 Ill. 2d 63, 64-68, wherein the defendant was convicted and sentenced concurrently for armed robbery and grand larceny, both charges based on the act of taking property from the victim. There, the defendant argued that only one crime had been committed, *i.e.*, armed robbery, and that his parole opportunities could be prejudiced if he remained convicted and sentenced for both crimes. The court viewed the issue as one of first impression and relied on three Indiana Supreme Court decisions for its resolution. In *Kokenes v. State* (1938), 213 Ind. 476, 13 N.E.2d 524, the case most relied upon by the court, the defendant was convicted and sentenced concurrently for robbery and armed robbery, both arising out of the same transaction. There the court reversed the robbery conviction and sentence, ruling that a finding of guilt as to armed robbery necessarily implied that defendant was guilty of the lesser included offense of robbery. It concluded that defendant's parole eligibility could be prejudiced if the robbery conviction was per-

mitted to stand. Relying on this authority, the *Schlenger* court observed that armed robbery necessarily involved an unlawful taking, thereby making the grand larceny conviction "unnecessary" and "superfluous." (13 Ill. 2d 63, 66.) The court, therefore, reversed the grand larceny conviction on the grounds that it could prejudice the parole opportunities.

Several years after *Schlenger,* the legislature enacted section 1–7(m) of the Criminal Code of 1961, entitled "Consecutive and Concurrent Sentences" (Ill. Rev. Stat. 1961, ch. 38, par. 1–7(m)). It provided:

> "When a person shall have been convicted of 2 or more offenses which did not result from the same conduct, either before or after sentence has been pronounced upon him for either, the court in its discretion may order that the term of imprisonment upon any one of the convictions may commence at the expiration of the term of imprisonment upon any other of the offenses."

Although the statutory language did not place a limitation on the imposition of concurrent sentences, the committee comments stated that subsection (m) was intended to codify the holding of *Schlenger* "by the implicit converse of the provision stated, *i.e.,* if the offenses resulted from the same conduct the defendant may not be sentenced on both, either concurrently or consecutively." (Ill. Ann. Stat., ch. 38, par. 1–7(m), Committee Comments, at 37 (Smith-Hurd 1972).) The comments also stated that the term "conduct" was used in the same sense in which the *Schlenger* court had used "same transaction." The comments were subsequently read in conjunction with section 1–7(m) as statutory authority for the proposition that, where two or more offenses arise from the same conduct, only the judgment for the most serious offense is permitted. *City of Chicago v. Hill* (1968), 40 Ill. 2d 130, 135-36.

Prior to 1970, the cases construing *Schlenger* and the committee comments focused solely on the defendants' acts and not on the motive or purpose behind their

performance. If the offenses were based on a single act, as in *Schlenger,* then only the conviction for the most serious offense was permitted. (*People v. Scott* (1969), 43 Ill. 2d 135, 143-44 (where upon one unlawful entry, defendant was charged with burglary with intent to commit rape, burglary with intent to commit a deviate sexual assault, and burglary with intent to commit theft); *City of Chicago v. Hill* (1968), 40 Ill. 2d 130, 134-36 (disorderly conduct and obstructing traffic); *People v. Duszkewycz* (1963), 27 Ill. 2d 257, 258-62 (rape and incest).) Conversely, if the convictions were based on separate and distinct acts requiring different elements of proof, the court held that the offenses did not arise from the same conduct. *People v. Johnson* (1970), 44 Ill. 2d 463, 475, *cert. denied* (1970), 400 U.S. 958, 27 L. Ed. 2d 266, 91 S. Ct. 356 (burglary and rape); *People v. Raby* (1968), 40 Ill. 2d 392, 403-04, *cert. denied* (1969), 393 U.S. 1083, 21 L. Ed. 2d 776, 89 S. Ct. 867 (disorderly conduct and resisting arrest).

In 1970, *People v. Stewart,* 45 Ill. 2d 310, 313, broadened the meaning of "same conduct" or "same transaction" to include consideration of the defendant's motivations. There, the defendant had been convicted of attempted robbery and aggravated battery resulting from the acts of inflicting serious bodily harm to his victim while simultaneously demanding money. The court, finding nothing in the record to suggest "the acts which constituted the offense of aggravated battery were independently motivated or otherwise separable from the conduct which constituted the offense of attempted robbery," reversed the conviction for the lesser offense, aggravated battery. (45 Ill. 2d 310, 313.) The court thus shifted its focus from the defendant's acts to his criminal objective at the time the acts were committed. *E.g., People v. Williams* (1975), 60 Ill. 2d 1, 13-14; *People v. Murrell* (1975), 60 Ill. 2d 287, 293; *People v. Redmond* (1974), 59 Ill. 2d 328, 339-40; *People v. Prim* (1972), 53 Ill. 2d 62, 78, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144,

93 S. Ct. 2731; *People v. Whittington* (1970), 46 Ill. 2d 405, 409-10 (consecutive sentences).

Cases subsequent to *Stewart* have applied both the "separate and distinct act" test and the "independent motivation" test. As a result, the opinions of this court and those of the appellate court have reached inconsistent results.

If, for example, the court views the burglary of a building as incidental to, or motivated by, defendant's objective to commit a crime therein, the defendant is convicted and sentenced only for the greater of the two offenses committed. (*E.g., People v. Williams* (1975), 60 Ill. 2d 1, 13-14; *People v. Sifers* (1975), 29 Ill. App. 3d 428, 430-31 (burglary and theft); *People v. Dye* (1974), 23 Ill. App. 3d 431, 433 (burglary and theft); *People v. Booth* (1974), 20 Ill. App. 3d 88, 93 (burglary and rape); *People v. Tiffin* (1974), 16 Ill. App. 3d 367, 371-72 (burglary and armed robbery); *People v. Dunham* (1973), 13 Ill. App. 3d 784, 785 (burglary and theft); *People v. Street* (1973), 11 Ill. App. 3d 243, 245 (burglary and theft).) If, on the other hand, the court views the burglary and crime committed therein as separate and distinct acts, multiple convictions and concurrent sentences are permitted. (*E.g., People v. Moore* (1972), 51 Ill. 2d 79, 87-88, *cert. denied* (1972), 409 U.S. 979, 34 L. Ed. 2d 242, 93 S. Ct. 331 (burglary and rape); *People v. Johnson* (1970), 44 Ill. 2d 463, 473-75, *cert. denied* (1970), 400 U.S. 958, 27 L. Ed. 2d 266, 91 S. Ct. 356 (burglary and rape); *People v. Burks* (1975), 29 Ill. App. 3d 74, 80-81 (burglary and armed robbery); *People v. Porter* (1973), 13 Ill. App. 3d 893, 901-02 (burglary and rape).) In cases involving armed robbery and aggravated battery, multiple convictions and concurrent sentences have been permitted only where the aggravated battery took place after the taking of the victim's property, rather than before or during the taking. *E.g., People v. Toles* (1975), 30 Ill. App. 3d 837, 842-43, and cases cited therein.

The rationale of the "independent motivation" test, as it relates to concurrent sentences, has never been fully articulated. Rather, it has been criticized on the grounds that it lacks statutory authority, permits a defendant to escape the consequences of his acts, and, in fact, encourages the commission of lesser offenses in order to accomplish the greater. *People v. Whittington* (1970), 46 Ill. 2d 405, 410-16 (Underwood, C. J., dissenting).

The *Schlenger* case was not premised on the defendant's criminal objective at the time he committed the crimes, but was predicated solely on the defendant's argument that multiple convictions for offenses arising from a single act, *i.e.*, the unlawful taking of property, might adversely affect his parole opportunities. This argument is not supportive of the "independent motivation" test, for the parole board, in making its decision, is, by statute, to consider the State's Attorney's report describing the facts and circumstances surrounding the crime for which the defendant is committed (Ill. Rev. Stat. 1973, ch. 38, pars. 1003—3—4(d)(1), 1005—4—1(c) and 1005—4—1(d)(5)). Section 3—3—5(c)(2) of the Unified Code of Corrections specifically provides:

> "The Board shall not parole a person eligible for parole if it determines that: ***
>
> (2) his release at that time would deprecate the seriousness of his offense or promote disrespect for the law." (Ill. Rev. Stat. 1973, ch. 38, par. 1003—3—5(c)(2).)

If, for example, a defendant causes his victim great bodily harm while committing or attempting to commit an armed robbery, the additional offense of aggravated battery, even though incidental to or motivated by the more serious criminal objective, *i.e.*, armed robbery, is a proper factor for the parole board to consider, for it reflects on the nature and seriousness of the defendant's overall conduct. Therefore, the defendant cannot claim he is unfairly prejudiced by the parole board's consideration of lesser offenses which are committed in the furtherance of a more serious criminal objective.

A distinction must be made between the imposition of consecutive versus concurrent sentences for offenses arising from the same conduct. The prejudicial effect of the double punishment in the form of consecutive sentences for crimes arising from multiple acts motivated by essentially the same criminal objective is apparent. This was recognized by the legislature in 1973, with the enactment of section 5—8—4(a) of the Unified Code of Corrections, which replaced section 1—7(m) of the Criminal Code of 1961. Section 5—8—4(a) provides:

"The court shall not impose consecutive sentences for offenses which are committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4(a).)

Unlike the committee comments to section 1—7(m), the committee comments to section 5—8—4(a) are silent with regard to concurrent sentences. In fact, the statutory language provides that "[s]entences shall run concurrently unless otherwise specified by the court." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4(a).) Defendant's criminal objective, therefore, is only relevant in the determination of whether *consecutive* sentences can be imposed.

Finally, we are aware of no constitutional limitations against multiple convictions and concurrent sentences for different offenses arising from multiple acts which are incidental to or motivated by some greater criminal objective. Multiple convictions and *consecutive* sentences have been permitted against claims of double jeopardy for offenses based on a single act but requiring proof of different facts. *Gore v. United States* (1958), 357 U.S. 386, 2 L. Ed. 2d 1405, 78 S. Ct. 1280; *Blockburger v. United States* (1931), 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180.

As indicated earlier, the dual standards for determining when multiple convictions and concurrent sentences are permissible have brought about confusing, illogical, and

inconsistent results. We, therefore, reject the "independent motivation" test as a standard for determining whether multiple convictions and concurrent sentences are permissible. Our rejection of this test is limited solely to concurrent sentences.

Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. "Act," when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered.

Applying this test to the facts before us, we observe that the offenses of rape and burglary are based on separate acts, each requiring proof of a different element. The convictions of both were, therefore, proper.

Accordingly, the judgment of the appellate court is affirmed.

*Judgment affirmed.*