THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIE WADE, Defendant-Appellant.

First District (1st Division)   No. 77-1230

Opinion filed April 16, 1979.

Ralph Ruebner, Kathy M. Morris, and F. E. Fernandez, all of State Appellate Defender's Office, of counsel, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Timothy D. McMahon, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Willie Wade (defendant) was found guilty of murder and sentenced to 50 to 100 years. He appeals. In this court, defendant contends the trial court denied him his constitutional right to a hearing and a ruling on his motion to suppress his confession; defendant was denied his constitutional right to counsel because of the incompetency of his trial attorney; the trial court improperly refused to instruct the jury on the testimony of an accomplice witness; the conduct

of the prosecutor denied defendant a fair trial and the sentence is excessive.

No point is raised on the sufficiency of the evidence to prove the guilt of defendant beyond a reasonable doubt. A summary of the evidence is therefore sufficient for the purposes of this opinion.

On October 16, 1976, defendant lived with Denise Bankston, 18 years old, and her daughter, on the first floor of an apartment building. Defendant was the janitor of the building. At 4 o'clock that morning a tenant named Emmit Hill, the victim, who lived in a third-floor apartment, came down and requested the defendant to repair the sink. Wilma Preston lived with Hill. She testified that on the morning in question, the sink fell off from the wall and water began to run into the apartment. The victim went downstairs and returned with the defendant. The defendant left briefly to get some tools and then returned. He was able partly to stop the flow of water. The victim again complained about the situation to defendant.

Defendant and the victim left the apartment together. The water stopped running but neither of the men returned. Wilma Preston went to search for the victim. She saw defendant and two tenants mopping the floor at the rear door of the building. She saw Denise Bankston mopping the floor at the front door area. She testified that defendant and Denise Bankston acted "nervous." She asked defendant about the victim. Defendant responded that the victim had followed him out of the apartment for only 2 or 3 feet and had then returned. A friend of Wilma Preston went to the boiler room where he saw blood on the floor. He went outside of the rear door and found the body of the victim.

Denise Bankston testified that the first complaint by the victim about the broken sink was made angrily. About a half-hour after the men left, she heard an argument in the hallway between defendant and the victim. The defendant entered the apartment and took a rifle which he kept behind the couch. The witness saw defendant shoot the victim as the victim raised his hands. Defendant then dragged the body to the rear exit of the building. The witness took a mop from her apartment and used it to clean up blood on the floor. Defendant asked her to help dispose of the body. She helped the defendant drag the body from the rear exit to the building next door. She also found six shell cases in the hallway and gave them to defendant. The witness noted that defendant had blood stains on his pants which she had not seen before. She gave a complete statement of these facts to the police. She was granted immunity from prosecution. She conceded that she did not tell the truth when questioned during the preliminary hearing.

Chicago Police Officer Schuler testified that he arrested the defendant in the latter's apartment. He detailed the statement that he

made to defendant regarding his *Miranda* rights. These were the standard rights that he used in all investigations. The defendant told him that he understood the rights. At police headquarters the defendant was interrogated by Police Officer Richards. He did this together with assistant State's Attorney Dennis Porter. Mr. Porter advised the defendant of his legal rights. Defendant stated that he was called to the apartment about 4 a.m. to stop the flow of water. The last time he left the apartment the deceased followed him for a short distance and then left. Defendant then went to his own apartment and went to sleep.

Thereafter Denise Bankston was interviewed. The police officer and assistant State's Attorney then questioned the defendant again. Defendant stated that he had a verbal altercation with the deceased. The argument continued down to the first floor. Defendant stated that the decedent reached into his back pocket. Defendant then reached into his apartment, "grabbed a rifle" and shot the decedent. The evidence shows that a subsequent search of defendant's apartment and of the vicinity did not disclose the rifle or any other weapon.

Assistant State's Attorney Dennis Porter testified in detail regarding the *Miranda* rights which he explained to defendant. Defendant said he understood these rights. The attorney then corroborated the testimony of the officer regarding the interviews with the defendant and his statements.

Shortly thereafter the attorney was called from the room. He then saw attorney John Lally who acted as attorney of record for defendant and tried the case. The assistant State's Attorney then went back and told defendant that the attorney wished to speak to him. The defendant responded that he would like to speak to the attorney. The interview with defendant was then terminated.

Defendant testified concerning the initial call upon him to stop the water. He stated that he made four trips to the victim's apartment. The second time that defendant left the apartment the victim accompanied him. After defendant had completed work on the sink, he obtained a broom on the first floor and swept part of the floor near the boiler room. He had noticed earlier that the floor area needed attention. Defendant saw that the rear door was unlocked and he locked it. Defendant then went home and went to bed. When the police arrested him, about 5:45 or 6 a.m., they took him to the station. On the way out, he unlocked the back door and tripped and fell on one knee. He saw no blood or bullet shells in the hall. He thought there was blood at the point where he had tripped but he did not know how the blood got on his pants.

Defendant further stated that the police did not tell him he was under arrest. On the way to the police station they stopped for coffee. At the station he was handcuffed to the wall. He was interviewed by various police officers. His trousers were taken from him about 11:30 or 12 o'clock

that morning. On direct examination he did not mention his *Miranda* rights. On cross-examination he testified that the police "didn't advise me of anything because at that time I wasn't under arrest, I wasn't supposed to be."

A stipulation was entered into to the effect that if evidence technician Jackson were called to testify, he would state that he found four shell casings in the hallway. He recovered samples of blood from the alley and also from the hallway of the first floor. In addition, if a medical technician were called she would testify that she took blood samples from the defendant. The testimony shows that the blood samples and blood which was found on defendant's trousers were all of type A. The defendant's blood was type O. The victim's blood was type A.

## I.

Counsel for defendant filed a motion to suppress statements by the defendant. The gravamen of the motion is the failure to give defendant his *Miranda* rights; defendant did not understand these rights because of his emotional and psychological state; the questioning continued after defendant had elected to remain silent and to consult with an attorney and the statements allegedly made by defendant were obtained by means of "psychological and mental coercion."

The motion was presented to the trial court for hearing immediately before trial. The motion was signed by the attorney for defendant. The assistant State's Attorney moved to strike the motion on the grounds of lack of specificity and lack of an affidavit as required by Rule 15.1(a) of the rules of the circuit court of Cook County. The rule provides that, "A motion founded upon facts not appearing of record in the case shall be supported by affidavit reciting the facts." Upon inquiry by the court, defendant's counsel stated that he would not allow the defendant to swear to the motion. The trial court suggested that the motion be withdrawn, properly sworn and resubmitted. Counsel for defendant refused to withdraw the motion. The trial court accordingly struck the motion.

■■ Defendant urges that the failure of the trial court to conduct a pretrial hearing on the motion to suppress was contrary to law. In Illinois, additional testimony at the trial, received even after a complete hearing on a pretrial motion to suppress a confession, may be considered by a reviewing court in passing upon a ruling upon the motion by the trial court. The theory is that a ruling on a motion to suppress is not final and may be changed or reversed at any time. (*People v. Braden* (1966), 34 Ill. 2d 516, 520, 216 N.E.2d 808; *People v. Turner* (1976), 35 Ill. App. 3d 550, 567, 342 N.E.2d 158.) Consequently, although a pretrial hearing may have been preferable, the issue before us is whether upon the entire record the evidence is sufficient to sustain the allegations of the motion to suppress.

We conclude that the trial court properly denied the motion as presented under the cited rule of the circuit court. However, we have reviewed the entire record to make certain that the defendant has not been deprived of any constitutional or legal right in this regard.

■■ In this type of case "[t]he burden of going forward with the evidence and the burden of proving that a confession was voluntary shall be on the State." (Ill. Rev. Stat. 1977, ch. 38, par. 114—11(d).) The quantum of proof required of the State has been aptly termed "one of persuasion and not beyond a reasonable doubt." (Ill. Ann. Stat., ch. 38, par. 114—11, Committee Comments, at 345 (Smith-Hurd 1977).) Thus, if the trial court had ruled upon the motion to suppress, the voluntary character of the confession would not necessarily have to be established by proof beyond a reasonable doubt. (*People v. Medina* (1978), 71 Ill. 2d 254, 258, 375 N.E.2d 78.) From the point of view of this court, the conviction should not be disturbed for this reason if we are satisfied that it is in accord with the manifest weight of all of the evidence in the record.

In the case before us, as the above recital of the evidence shows, we have concluded that the entire record demonstrates that the State has proved the voluntary character of this confession beyond any reasonable doubt. There is credible testimony by three witnesses that a police officer and an assistant State's Attorney advised defendant fully regarding his *Miranda* rights. As against this, defendant testified that the police "didn't advise me of anything." Defendant's own testimony demonstrates his intelligence and mental capacity fully to understand these warnings. We find no evidence here of psychological or mental coercion. Compare *People v. Luckett* (1977), 48 Ill. App. 3d 536, 542, 362 N.E.2d 1297.

In *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, the supreme court set forth the four factors to be considered in determining the validity of a confession. In the case before us these factors are applicable as follows:

(1) The evidence is clear that the *Miranda* warnings were given.

(2) There was no long period of detention. Defendant was arrested at about 5:45 a.m. and his statement to the police was made only a few hours later.

(3) There are no "intervening circumstances" in the case before us such as detention pursuant to lawful judicial order.

(4) We find no evidence in the record here of any official misconduct or violation of constitutional rights by the officials involved.

■■ On the entire record, therefore, we conclude that the defendant did receive his proper warnings and there is in fact no evidence of any other type upon which this confession may be assailed. Consequently, we find no error in this regard.

## II.

In his argument on lack of effective assistance of counsel, defendant points to the refusal of his trial attorney to resubmit the motion to suppress with proper affidavit; reading of unfavorable and inadmissible material to the jury during opening statement concerning possession of a rifle by defendant; eliciting of detrimental evidence on cross-examination such as by reading the statement made by Denise Bankston to the police; and a general unfamiliarity with practice in criminal cases.

This question regarding competence of counsel "must be answered solely from the circumstances of each particular case." (*People v. Witherspoon* (1973), 55 Ill. 2d 18, 23, 302 N.E.2d 3, and cases there cited.) The Supreme Court of Illinois has consistently adhered to the rule of a strict test in determining the competence of privately retained counsel such as we have in the case before us. The court has most recently held that " 'in such a case the court will not reverse a conviction because of the incompetency of counsel unless the representation is of such a low caliber as to amount to no representation at all or reduces the court proceedings to a farce or sham.' " *People v. Murphy* (1978), 72 Ill. 2d 421, 436, 381 N.E.2d 677, and cases there cited.

In our opinion, it would be possible to take virtually every trial record and, by the use of the excellent optical qualities of hindsight, to level some adverse ciriticism against the conduct of counsel. Decisions of tactics in a criminal case must often be made with split-second speed. Many of these decisions may then be subject to criticism and difference of opinion. For this reason the courts of Illinois have firmly adhered to the principle that mere "errors in judgment or trial strategy do not establish incompetency." (*Murphy*, 72 Ill. 2d 421, 437, and authorities there cited. See also *People v. Johnson* (1977), 45 Ill. App. 3d 255, 257-58, 359 N.E.2d 791.) In view of the evidence before this court, we believe that virtually all of the criticism presently sought to be leveled at trial counsel for the defendant basically involves simply trial tactics which may well be the subject of difference of opinion. For example, in *People v. Owens* (1976), 65 Ill. 2d 83, 93, 357 N.E.2d 465, the supreme court rejected a claim of incompetence of counsel based upon the theory that the attorney failed to file a motion to suppress, to contest an identification and to tender proper instructions. See also *People v. Seaman* (1977), 53 Ill. App. 3d 755, 368 N.E.2d 1124.

Of the greatest importance here is the repeated requirement by the courts of Illinois that in proving a violation of constitutional rights based upon the alleged incompetence of counsel "the defendant must establish that he suffered a substantial prejudice from the manner in which his counsel conducted his defense." (*Witherspoon*, 55 Ill. 2d 18, 21. See also

*People v. Newell* (1971), 48 Ill. 2d 382, 387, 268 N.E.2d 17.) In addition, the court in *Witherspoon* pointed out that " '[a] claim of prejudice cannot be based on mere conjecture' " (55 Ill. 2d 18, 21). We are satisfied from the entire record before us that no prejudice of any kind resulted from any or all of the points of criticism directed at defendant's trial counsel. We will add that we would reach the same result if the standard of legal representation by private counsel was fixed at a lower point than above indicated, such as the need to meet a minimum professional standard. See *People v. Smith* (1977), 53 Ill. App. 3d 395, 408-09, 368 N.E.2d 561.

### III.

■■ Counsel for defendant tendered an instruction stating that the testimony of an accomplice is subject to suspicion and should be considered with caution and carefully examined. (Illinois Pattern Jury Instruction, Criminal, No. 3.17 (2d ed. 1968).) The trial court rejected this tender. The Supreme Court of Illinois has formulated the legal definition of an accomplice. The test is whether the person in question could have been indicted for the offense either as a principal or upon the theory of accountability. (*People v. Robinson* (1974), 59 Ill. 2d 184, 190-91, 319 N.E.2d 772.) In the case before us we conclude that Denise Bankston, the alleged accomplice, did not have that legal status. The evidence demonstrates that she was not involved in the commission of the crime and had no connection with it until after the death of the victim. Therefore, she could not have been convicted as a principal or upon the theory of accountability.

The same issue was decided in *People v. Coddington* (1970), 123 Ill. App. 2d 351, 371, 259 N.E.2d 382. This court held that an instruction on accomplice testimony was properly rejected where the alleged accomplice was not involved in the crime in any way until after the death of the victim. In our opinion the trial court properly rejected the tendered instruction on accomplice testimony.

### IV.

In the case before us, these points are raised by counsel for the defendant concerning alleged improper conduct by the prosecution:

■■ ■ (1) The assistant State's Attorney told the jury to listen carefully to the evidence as they would not be entitled to a transcript of the testimony of the witnesses. This statement was not literally true. (See *People v. Autman* (1974), 58 Ill. 2d 171, 176, 317 N.E.2d 570.) In addition, the statement was unnecessary and should not have been made. However, no objection was made to this argument at trial. It follows that "the error is, therefore, deemed waived." (*People v. King* (1977), 66 Ill. 2d 551, 559, 363 N.E.2d 838.) Another independent and effective reason for waiver springs from the omission of this point from the motion for new trial. *People v.*

*Edwards* (1978), 74 Ill. 2d 1, 4, 383 N.E.2d 944; *People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227.

■■ (2) In examining assistant State's Attorney Dennis Porter on direct examination, the prosecutor brought out that defendant's counsel appeared at the police station. Mr. Porter further testified that, upon being informed of this fact, the defendant told Mr. Porter that he wished to speak with his own lawyer. In closing argument the prosecutor called this fact to the jury's attention. He stated that defendant's counsel arrived at the station and no further interview was conducted at that time. Objection by the defense counsel to this testimony was overruled. Defendant urges that this is a comment upon post-arrest silence by the accused. We disagree. We draw from these trial events no remark or comment regarding the substance of the statement made by defendant or the failure of his statement to state any particular fact. (Compare *People v. Hooker* (1977), 54 Ill. App. 3d 53, 369 N.E.2d 147, and *People v. Robinson* (1976), 44 Ill. App. 3d 447, 358 N.E.2d 43.) In addition, in view of the strong and convincing evidence in the case before us, we are satisfied beyond a reasonable doubt that if there was any error in the ruling of the trial court in this regard, it did not contribute to the conviction of the defendant. *People v. Lewis* (1977), 51 Ill. App. 3d 109, 116, 366 N.E.2d 446.

■■ (3) In cross-examining the defendant as to whether he received his *Miranda* warnings, the prosecutor crossed the line of propriety. On three occasions he asked the defendant if another designated witness who testified to the contrary was telling a lie or not telling the truth. Although this type of tactics is subject to criticism, we find no prejudicial error in this regard. See *People v. Addison* (1977), 56 Ill. App. 3d 92, 101, 371 N.E.2d 1025, citing *People v. Jackson* (1974), 19 Ill. App. 3d 689, 312 N.E.2d 405, *cert. denied* (1975), 420 U.S. 935, 43 L. Ed. 2d 412, 95 S. Ct. 1144.

■■ (4) In closing argument, the State's Attorney asked the jurors rhetorical questions regarding what possible motive certain designated witnesses for the State could have in fabricating testimony or lying to the jury. We do not regard this type of argument as quite the same as that in which a prosecutor attempts to vouch directly for the credibility of a witness. These comments by the prosecutor were in part based upon the evidence such as a reference to the assistant State's Attorney as being himself an attorney. (See *People v. Prim* (1972), 53 Ill. 2d 62, 77, 289 N.E.2d 601.) Applicable to each and all of the above arguments by counsel for defendant is the fact that the jury was instructed by the trial court that they should consider only the testimony of the witnesses in making their determination of the facts and that neither opening statements nor closing arguments are evidence. See *People v. King*, 66 Ill. 2d 551, 559.

Furthermore, it has been repeatedly stated that the general atmosphere of a trial is important in this regard so that the trial court is in a better position than any reviewing court to determine whether any argument was actually prejudicial. Therefore, it is our duty to approve the ruling of the trial court in these matters unless we find a clear abuse of discretion. *People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324.

We also note the accepted rule that no prejudicial error results from final argument unless it constituted "a material factor in the conviction" (*People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 363), resulted in "substantial prejudice to the accused" (*People v. Nilsson* (1970), 44 Ill. 2d 244, 248, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881, or the verdict would have been different had the improper comments not been made (*People v. Trice* (1970), 127 Ill. App. 2d 310, 319, 262 N.E.2d 276). We find no reversible error in this regard.

V.

Defendant prays for reduction of his sentence of 50 to 100 years. Defendant concedes that there are two previous sentences to the penitentiary in his record. He also directs to our attention the fact that the State's Attorney told the trial judge that, "Since 1963 Mr. Wade [defendant] has accumulated a considerable number of arrests and convictions, in 1974 for carrying a gun." However, nothing in the record before us would indicate that the trial judge was swayed or influenced in any manner by this brief statement.

■■ It is correct, as defendant's counsel points out, that defendant's last felony conviction occurred nearly 20 years ago. However, it is our opinion, that we are not legally justified in reducing the sentence in the case before us. In *People v. Heflin* (1978), 71 Ill. 2d 525, 545, 376 N.E.2d 1367, in dealing with a sentence of 30 to 60 years for murder, the supreme court once more restated the rule that the sentence should not be disturbed "unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose." In *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, the supreme court refused to reduce a sentence and in effect required that this court conclude that the trial court abused its discretion as a prerequisite to the reduction of a sentence. In view of these decisions the sentence will not be reduced.

The judgment appealed from is accordingly affirmed.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.