THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TIMOTHY TURNER *et al.*, Defendants-Appellants.

First District (1st Division)    No. 79-603

Opinion filed December 29, 1980.

James J. Doherty, Public Defender, of Chicago (Robert D. Glick and Frances Sowa, Assistant Public Defenders, of counsel), for appellant Timothy Turner.

Ralph Ruebner and Steven Clark, both of State Appellate Defender's Office, of Chicago, for appellant Darryl Bell.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Adrienne Noble Nacev, and Barry S. Pechter, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Timothy Turner and Darryl Bell were charged with murder and attempt armed robbery. After denial of motions for severance, Bell and

Turner were tried before a jury. Defendants were found guilty on both charges. Turner was sentenced to a term of 25 to 50 years on the charge of murder, and 2 to 8 years, concurrently, on the charge of attempt armed robbery. Bell was sentenced to a term of 18 to 40 years on the charge of murder, and 2 to 8 years, concurrently, on the charge of attempt armed robbery. Defendants appealed individually and their cases were consolidated on the motion of the State.

We affirm.

On appeal defendants contend that: (1) the trial court erred in rejecting the tendered instruction on accomplice testimony, and; (2) the prosecutor's remarks during closing argument deprived defendants of a fair trial. Defendant Turner additionally argues that: (3) the trial court erred in allowing a witness to testify to a conversation in which one co-defendant implicated the second co-defendant in the commission of the offenses charged, and; (4) the defendant was not proved guilty beyond a reasonable doubt.

Timothy Turner and Darryl Bell were charged with the murder and attempt armed robbery of Robert Crawford.

Johnny Rogers testified that he had been employed at the Standard Oil gas station located at 76th and Cottage Grove in Chicago. On the night of October 25, 1974, Rogers was driving around the neighborhood drinking port wine and Kool-Aid. At approximately 10:15 p.m., as he was driving past his place of employment, he observed Robert Crawford inside the gas station and two men whom he identified as Timothy Turner and Darryl Bell walking toward the station. Rogers circled around the block at 5-10 miles per hour. As he embarked on his second journey around the block he heard a gunshot. Seconds later, he saw Bell and Turner running out of an alley next to the station and toward his car. They flagged down Rogers and Rogers allowed them to get into the car.

As defendants got into the back seat, Bell put his hands over the seat and said that he had been shot and needed to go to the hospital. When Rogers asked the men what had happened, defendant Bell answered that Turner had shot him in the hand while they were trying to rob Robert Crawford. Rogers drove the men 10 to 12 miles away to Cook County Hospital where Bell was later treated for a gun shot wound of the left hand. Turner gave Rogers some money and Rogers then went home.

Three days later, Rogers ran into Turner at a liquor store. When Rogers inquired about the gas station incident, Turner said that he mistakenly had shot Bell while they were trying to rob Crawford at the filling station.

On cross-examination, Rogers admitted that he failed to promptly report the incident to the police because he was "kind of scared" of the defendants. Additionally, he testified that although he was friendly with

the victim and still an employee of the gas station when the shooting occurred, he never returned to the station for work or to see what had happened to Crawford.

Philip Daily testified that at about 10:30 p.m. on October 25, 1974, he drove into the Standard Oil gas station to buy some gas. As he drove up to the pump, he heard a gunshot. He then saw three men struggling in the doorway of the station. All three fell toward the ground. One of them lay there and the other two ran. Daily stated that one of the men who ran was tall with light skin and the other was shorter and darker. He thought that the taller of the two men had a gun in his hand. He was unable to identify the two defendants as the men he had seen in the gas station.

Odessa Smith, who lived across the street from the Standard station testified that at about 10:15 p.m. on October 25, 1974, she was looking out her window when she saw two men enter the service station and begin talking to and pushing Crawford. She described one of the men as tall, thin and light complected, and the other as a little shorter and dark. She called the police. She then observed the three men coming out of the station "all huddled together," the tall, light skinned man in front of Crawford, and the darker one in back. She then heard a gun shot and saw Crawford and the man behind him fall. Both men then started running toward the alley. She also was unable to identify defendants as the two men she saw in the service station on the night of the incident.

Crawford died on October 27, 1974 of a bullet wound in the neck and upper chest area. Both Turner and Bell were found guilty of murder and attempt armed robbery.

Defendants each appealed and their cases were consolidated on the State's motion.

First, we must consider defendants' contention that the trial court erred in rejecting a jury instruction on accomplice witness testimony. At the conference on jury instructions, defense counsel tendered to the court Illinois Pattern Jury Instruction, Criminal, No. 3.17 (1968), (IPI), which provides:

> "An accomplice witness is one who testifies that he was involved in the commission of a crime with the defendant. The testimony of an accomplice witness is subject to suspicion, and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case." (IPI Criminal No. 3.17 (2d ed. 1968).)

The trial court rejected the tendered instruction, stating that there was "no evidence in the record that from a legal standpoint that [Rogers] did anything to aid or abet any of the areas that would make him an accomplice to this particular act." Defendants argue that there was sufficient evidence to support a jury finding that Johnny Rogers was an

accomplice. The State, on the other hand, maintains that there was no evidence to support a finding that Rogers was an accomplice, or that he was in any way accountable for the murder and attempt armed robbery.

An accomplice is one who could himself have been indicted for the offense either as a principal or accessory. (*People v. Hrdlicka* (1931), 344 Ill. 211, 176 N.E. 308; *People v. Clark* (1979), 73 Ill. App. 3d 85, 391 N.E.2d 576; *People v. Wade* (1979), 71 Ill. App. 3d 1013, 389 N.E.2d 1230.) He must take some part, perform some act or owe some duty to the person in danger that makes it incumbent on him to prevent the commission of a crime. *People v. Robinson* (1974), 59 Ill. 2d 184, 191, 319 N.E.2d 722, quoting *People v. Hrdlicka* (1931), 344 Ill. 211, 221-22, 176 N.E. 308, 313.

■■ This court has held that an instruction on accomplice testimony need not be given where the alleged accomplice was not involved in any way until after the commission of the crime. (*People v. Wade* (1979), 71 Ill. App. 3d 1013, 389 N.E.2d 1230; *People v. Coddington* (1970), 123 Ill. App. 2d 351, 259 N.E.2d 382.) Johnny Rogers' coincidental presence near the scene of the crime and his unusual willingness to aid defendants in their pursuit of medical treatment are indeed puzzling. The record is devoid of any facts, however, which indicate that Rogers was part of a common design to commit the unlawful acts. Thus, a cautionary instruction as to the weight to be given Rogers' testimony was not required.

Defendants alternatively argue that the trial court should have given IPI Criminal No. 3.17 and submitted to the jury the issue of whether Rogers was an accomplice witness. Allowing the jury to decide whether a witness is an accomplice has not been a common practice in the Illinois trial courts. It is our opinion that the trial court would not have been in error if it had permitted the jury to resolve the issue. The decision of whether to do so, however, is within the trial court's discretion.

Second, we must decide whether the prosecutor's remarks during closing argument deprived defendants of a fair trial. Defendant Turner claims that the assistant State's Attorney, four times during closing argument, made remarks which were improper, inflammatory, prejudicial and went beyond the scope of the evidence. Defendant Bell objects only to the first of these remarks. We will discuss each of the four remarks individually.

The comment that both defendants claim was improper was the following statement by the prosecutor:

> "Now ladies and gentlemen, Johnny Rogers is no angel and we never said Johnny Rogers was an angel. Johnny Rogers is a street wise young man and if you believe for one second that he came into this Courtroom and sat on that witness stand and fingered two guys in a Murder that didn't do it then you don't know much about

the street because to do that he would be signing his death warrant."

Defense counsel objected. The trial court immediately sustained the objection and instructed the jury to disregard it. Bell and Turner both contend that the remark improperly bolstered Rogers' credibility and cast aspersions upon the characters of the defendants. It is our opinion that the remark was not substantially prejudicial. If the remark bolstered Rogers' credibility at all, it did so to a minimal degree. Furthermore, the act of promptly sustaining the objection and instructing the jury to disregard the comment has usually been viewed as sufficient to cure any prejudice. *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.

Defendant Turner also objects to the following statement made by the prosecutor during his recapitulation of the testimony of Philip Daily:

"Mr. Daily told you when the two men left that station Mr. Turner was in the lead running to the alley. Mr. Bell followed—excuse me, a dark complected individual followed and a lighter individual was in the lead and they ran towards the alley."

No objection to this remark was made during argument, and the error is therefore deemed waived. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) Even if defendant had objected at the appropriate time, we would find that no prejudice resulted in light of the fact that the assistant State's Attorney immediately corrected his mistake, and the fact that the trial judge instructed the jury to disregard any statement made by the attorney not based on the evidence.

■■ Commenting on Odessa Smith's testimony the assistant State's Attorney stated:

"She told you about the struggle, she heard the shot and saw something in the lighter skinned man's hands and saw Robert Crawford fall on the ground."

Defendant Turner correctly points out that although Smith did state that she saw "some object," she did not in fact state who had the object or what the object was. Again, defendant failed to object to the prosecutor's statement during closing argument, and he has therefore waived the right to challenge the argument. *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.

■■ The final prosecutorial remark to which defendant Turner objects was a comment in reference to defense counsel's cross-examination of Philip Daily. The following exchange transpired:

"ASSISTANT STATE'S ATTORNEY: Then I asked Mr. Daily did you get a good look at their faces, no I didn't, it happened to [*sic*] fast, I didn't see it. Could you recognize them, No I can't. What's the first question counsel asked him, do you see him in this Courtroom. He just got through telling you that he couldn't

recognize him and he asks him do you see him in this Courtroom. A nice trip—

DEFENSE COUNSEL: Objection.

THE COURT: Sustained, I'll ask you not to reflect on counsel's presentation of their case.

ASSISTANT STATE'S ATTORNEY: I guess if we had a jury box of two year olds we wouldn't proceed though a smoke screen—

THE COURT: I'll instruct you not to use this type of argument again. I hope I don't have to admonish you again."

Criticism of a prosecutor's remark concerning defense counsel's "blowing smoke" has been rejected when a reasonable individual might reach a similar conclusion. (See *People v. Madden* (1978), 57 Ill. App. 3d 107, 372 N.E.2d 851.) Having read the transcripts of defense counsel's cross-examination of the witness, we do not believe that a reasonable individual would agree with the assistant State's Attorney's characterization of defense counsel's presentation of his case. The comment was therefore improper. However, in light of the fact that the trial judge immediately sustained an objection to the statement, we again conclude that the comment did not substantially prejudice defendant Turner. We find that the assistant State's Attorney's remarks on closing argument, when considered either individually or collectively, do not warrant reversal of defendants' convictions.

Third, we must consider defendant Turner's contention that the trial court erred in allowing a witness to testify to a conversation in which co-defendant implicated defendant in the commission of the offenses charged. On direct examination, Johnny Rogers was asked to repeat the conversation which transpired after Turner and Bell entered his car on the night the alleged offenses took place. Rogers testified that Bell admitted that he had been shot by Turner while he and Turner were attempting to rob the gas station attendant. Rogers further testified that 3 days later he ran into defendant Turner in a liquor store, and that Turner at that time admitted that he had shot Bell while he and Bell were trying to rob the attendant at the gas station. Turner claims that the trial court erred in allowing Rogers to testify to the conversation in which co-defendant Bell implicated defendant Turner in the commission of the offenses charged.

In *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, the United States Supreme Court held that in joint trial, the admission into evidence of an out-of-court statement by one co-defendant implicating the second co-defendant, violates the latter's sixth amendment rights to confront witnesses against him. *Bruton* was deemed applicable to State court proceedings in *Roberts v. Russell* (1968), 392 U.S. 293, 20 L. Ed. 2d 1100, 88 S. Ct. 1921. Illinois courts, however, have held

that no violation of the *Bruton* rule occurs when the defendant claiming the benefit of the rule has himself made a similar inculpatory admission which is admitted into evidence. *People v. Rosochacki* (1969), 41 Ill. 2d 483, 244 N.E.2d 136; *People v. Marine* (1977), 48 Ill. App. 3d 271, 362 N.E.2d 454; *People v. Bassett* (1974), 56 Ill. 2d 285, 307 N.E.2d 359.

In *Rosochacki*, the Illinois Supreme Court stated:

"It is clear to us that a very substantial difference exists between a case in which a jury hears a co-defendant's statement incriminating a defendant who has himself made similar inculpatory admissions, and the *Bruton*-type case in which the co-defendant's statement is used against a defendant who has made no admissions. In the former case the prejudice to the defendant, if any, is minimal, and entirely insufficient to necessitate retrial, particularly where, as here, defendant's guilt seems clear." 41 Ill. 2d 483, 494, 244 N.E.2d 136, 142.

In the case at bar, defendant Bell did not testify at trial and therefore, defendant Turner did not have the opportunity to cross-examine the person who allegedly made the inculpatory statement. Turner, however, made an inculpatory admission which was admitted into evidence and was almost identical to the admission made by defendant Bell. Thus, under the *Rosochacki* exception to the *Bruton* rule, the trial court properly allowed Rogers to relate the conversation in which Bell implicated Turner.

Defendant Turner's final contention is that he was not proved guilty beyond a reasonable doubt. Evaluation of the credibility of witnesses, the determination of weight to be given testimony, and inferences to draw from testimony is a function of the trier of fact. (*People v. Padilla* (1979), 70 Ill. App. 3d 406, 387 N.E.2d 985.) Having carefully reviewed all of the evidence, we do not believe that there is a reasonable doubt of defendant's guilt.

For the foregoing reasons, we affirm the judgments of the circuit court of Cook County.

Judgments affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.