Willie WADE, Petitioner-Appellant,

v.

Gayle FRANZEN, Director, Illinois Department of Corrections, and Marvin Reed, Warden, Stateville Penitentiary, Respondents-Appellees.

No. 81–1954.

United States Court of Appeals, Seventh Circuit.

Argued April 6, 1982.

Decided May 18, 1982.

Fe Fernandez, Asst. Deputy State Appellate Defender, Chicago, Ill., for petitioner-appellant.

David Bindi, Asst. Atty. Gen. of Ill., Crim. Just. Div., Chicago, Ill., for respondents-appellees.

Before BAUER and POSNER, Circuit Judges, and GRANT,* Senior District Judge.

POSNER, Circuit Judge.

Willie Wade was convicted of murder by a jury in an Illinois state court and sentenced to 50 to 100 years in prison. The Illinois Appellate Court affirmed his conviction with full opinion. *People v. Wade*, 71 Ill.App.3d 1013, 27 Ill.Dec. 822, 389 N.E.2d 1230 (1979). After exhausting his state remedies Wade filed a petition for habeas corpus in federal district court. The district court denied the petition and Wade has appealed. He raises two issues. The first is whether *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), entitled him to a separate hearing, outside of the presence of the jury, on the voluntariness of his confession. The second is whether he was denied the right to effective assistance of counsel. The issues are interrelated. Counsel forfeited Wade's right to a separate hearing on the voluntariness of his confession by refusing to comply with the procedural requirements for such a motion. Since the reasonableness of those requirements is not questioned, we are barred by *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), from reaching the merits of the first issue unless we find that Wade was denied effective assistance of counsel.

■ Wade lived with his 18-year-old girlfriend, Denise, in an apartment on the ground floor of a building where he was the

* Of the Northern District of Indiana.

janitor. Hill was a tenant who was living with an ex-girlfriend of Wade's. One night there was a party in Hill's apartment which ran very late. At 4:00 a. m. someone bumped into the sink in the bathroom of the apartment, the sink fell off the wall, and water poured from the pipes into the apartment. Hill went to fetch Wade to stop the flood. Wade came and made efforts to do so that were only partially successful, and then left the apartment, followed by Hill. In the hallway outside Wade's apartment they got into an argument. Hill accused Wade of having made advances to Hill's girlfriend (Wade's ex-girlfriend) and when she rebuffed them of having drawn a gun on her. Wade entered his apartment, grabbed a rifle from behind the sofa, returned to the hallway, and there shot Hill repeatedly in the chest. Wade and Denise dragged the body out to the alley behind the apartment building and then came back to mop up the blood in the hallway. There they were found, acting "nervous," by Hill's girlfriend, who had gone looking for Hill when he did not return to his apartment. Another member of the party in Hill's apartment also went looking for Hill, saw blood in the boiler room, found Hill's body in the alley, and called the police. When the police arrived they saw blood on Wade's trousers and took both Wade and Denise into custody. Wade confessed. Denise, an eyewitness to the murder, testified against him, under a grant of immunity, at his trial. The blood on Wade's trousers turned out to be of Hill's blood type, not Wade's. The murder weapon was never found.

Wade was represented at trial by the lawyer for the building's owner. He was a real estate lawyer who had never tried a felony (let alone a murder) case before, may never have tried any kind of criminal case before, and had little if any knowledge of criminal procedure. His first blunder involved the question of a separate hearing on the voluntariness of Wade's confession. Before confessing to the murder, Wade had been questioned for several hours while handcuffed to the wall of the police station without his trousers, which had been re-

moved to check out the stains; and misrepresentations may have been made to him concerning Denise's statement to the police. Although the circumstances did not establish involuntariness as a matter of law, they raised enough questions to warrant a separate hearing and Wade's lawyer in fact moved for one. But he refused to comply with a local court rule, the validity of which is unchallenged, that the movant attest to the truth of the facts alleged in the motion. The lawyer was afraid that attestation would be treated as a waiver of Wade's right not to be forced to incriminate himself. It would not have been. See *Simmons v. United States*, 390 U.S. 377, 389–94, 88 S.Ct. 967, 973–76, 19 L.Ed.2d 1247 (1968). This was plain error on the lawyer's part; no conceivable tactical motive can be attributed to his action.

Having waived his best pretrial motion, Wade's lawyer proceeded to make a number of silly motions, such as one to forbid any mention of how Hill had died. All were denied, with the trial judge expressing some doubt as to counsel's familiarity with criminal procedure. Then in his opening statement counsel hurt his client's cause by denying that Wade had carried a rifle to a room on the second floor and hidden it there and that Wade had said "I just shot that nigger." The "facts" denied had not been mentioned in the prosecutor's opening statement and there is no indication that the prosecution intended to establish them or could have done so.

Cross-examination of the state's witnesses actually buttressed the state's case. For example, cross-examining a witness who testified that she saw Denise carrying a blanket but did not in her testimony suggest any connection between the blanket and the crime, Wade's lawyer asked whether the blanket was large enough to cover a *body and whether Denise had been using it* to mop up blood. He asked a police officer whether the officer remembered being told that Wade was carrying a gun on the night of the murder; when the officer could not recall, Wade's lawyer refreshed his recollection with a police report stating that, yes,

Wade had been seen carrying a gun. Finally, the lawyer threw away the one fact in Wade's favor—that the murder weapon had never been found—by suggesting to witnesses places where the gun might have been hidden and the police had failed to look.

These pratfalls raise grave doubts concerning the competence of Wade's lawyer. The state is reduced to far-fetched imaginings concerning a possible strategy behind the lawyer's tactics, and to stating: "All attorneys must start somewhere." Although the Illinois Appellate Court found that Wade had not been denied effective assistance of counsel, it applied the wrong standard. It distinguished between cases where counsel is assigned to an indigent defendant and cases such as the present where he is represented by retained counsel, and held that in the latter case " 'the court will not reverse a conviction because of the incompetency of counsel unless the representation is of such a low caliber as to amount to no representation at all or reduces the court proceedings to a farce or sham.' " *People v. Wade, supra*, 71 Ill. App.3d at 1019, 27 Ill.Dec. 828, 389 N.E.2d at 1236. But in *Cuyler v. Sullivan*, 446 U.S. 335, 344–45, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980), the Supreme Court held that the constitutional standard is the same whether counsel is appointed or retained, and at least in this circuit that standard is "minimum professional competence," *United States ex rel. Williams v. Twomey*, 510 F.2d 634, 641 (7th Cir. 1975), not "farce or sham." The Illinois Appellate Court hedged its bets, as it were, by stating, "we would reach the same result if the standard of legal representation by private counsel was fixed at a lower point than above indicated, such as the need to meet a minimum professional standard." 71 Ill.App.3d at 1020, 27 Ill.Dec. at 828, 389 N.E.2d at 1236. But the court did not explain the application of this standard to the facts of the case. A bare conclusion does not invite deference. A bare conclusion is also all we find in the opinion of the district judge, who stated only: "While this court does not find defense counsel's knowledge of criminal law and procedure to be completely correct, the court does not find that counsel's performance failed to meet the minimum professional standards."

■ Unexplained as they are, the conclusions of the Illinois Appellate Court and of the district court are difficult to accept in the circumstances of this case. The usual, and usually disabling, difficulty in establishing ineffective assistance of counsel is that what may look to a court, especially an appellate court, like a blunder can be explained more or less plausibly as a reasonable if unsuccessful tactic. Where, however, the lawyer is completely inexperienced in criminal litigation, as appears to have been the case here, the hypostatization of a subtle and far-seeing strategy behind the apparent blunders is unconvincing. Wade's lawyer did not have enough criminal experience to depart from the book with any hope of success. Of course the mere fact that a lawyer makes errors in the course of a trial does not demonstrate failure to meet minimum professional standards. Minimum professional competence does not imply infallibility; nor are even the best lawyers infallible. But representation permeated by serious and inexplicable errors falls below minimum standards.

While we think the state was not entitled to summary judgment, we are not persuaded that Wade was either. Neither party submitted the trial record to the district court. Facts alleged and not denied concerning Wade's representation at trial raise as we have suggested an inference of ineffective assistance of counsel, but the district judge should examine the record before making a final decision; he may even want to hold an evidentiary hearing, at which Wade's lawyer could be asked to testify. The important thing is that the lawyer's handling of the defense be evaluated as a whole. A blunder at one point in a trial might be redeemed by a flash of brilliance at another. Even frequent lapses might be atoned for by nothing more dramatic than dogged persistence in the defense of an apparently hopeless cause.

■ The district court must also consider whether, even if the state court erred in

allowing Wade to be tried with such a lawyer representing him, the constitutional error may not have been a harmless one. It is true that the concept of harmless error has only a limited role to play in regard to denial of the right to effective assistance of counsel. To decide that an error is harmless presupposes that the reviewing court has an accurate picture of the facts, and if the defendant was not effectively represented the factual record compiled at the trial may be distorted. A minority of courts hold that the harmless error doctrine may never be used in an ineffective assistance of counsel case. See, e.g., *Moore v. United States*, 432 F.2d 730, 737 (3d Cir. 1970) (*en banc*); *Gilbert v. Sowders*, 646 F.2d 1146, 1150 (6th Cir. 1981). The majority reject this position. See, e.g., *Cooper v. Fitzharris*, 586 F.2d 1325, 1331–32 (9th Cir. 1978); *United States v. DeCoster*, 624 F.2d 196, 208 and n. 74 (D.C.Cir.1979) (*en banc*); *Dyer v. Crisp*, 613 F.2d 275, 278 (10th Cir. 1980). The Supreme Court has not ruled on the issue; nor has this circuit.

The minority position seems extreme to us. A lawyer might make a blunder so egregious as to be inconsistent with the observance of minimum professional standards, yet a reviewing court might be certain that the defendant would have been convicted even if the blunder had not been committed. It is too syllogistic to argue, as Judge Hufstedler did in her dissenting opinion in *Cooper v. Fitzharris, supra*, 586 F.2d at 1338, that since the harmless error doctrine does not apply to cases where the criminal defendant is denied all assistance of counsel, and since ineffective assistance of counsel may be little better than no assistance, it should not apply in ineffective assistance of counsel cases either. Wade does not allege incompetence of counsel so pervasive that no one knows what really happened in this case. The alleged incompetence consists of a series of discrete blunders, and if neither singly nor in combination they were prejudicial we do not see why Wade should be entitled to another trial with different counsel.

Making every allowance for the fact that more skillful counsel would have shaped the record to be less adverse to Wade, and correcting for all of the lawyer's blunders and hence assuming that Wade's confession had been suppressed, along with the statement "I just shot the nigger" and the speculations about possible hiding places for the gun and possible uses of the blanket, we have the impression that the remaining evidence of guilt—Denise's eyewitness testimony, the blood on the trousers, and much else besides—was overwhelming. But we have not read the trial record. The district court must do so and it must decide, in the first instance at least, whether, if Wade was denied effective assistance of counsel because of the many blunders that his lawyer made, it still is clear beyond a reasonable doubt that he would have been convicted of Hill's murder.

There are some criminal prosecutions so open and shut that no rational jury would acquit no matter how dazzling the defense lawyer. To doubt this is not only to romanticize the defense bar unduly but also to question the rationality of our criminal justice system as an instrument of truth. We therefore decline to exclude all possibility of finding harmless error in a case where the defendant has not had effective assistance of counsel.

VACATED AND REMANDED.