THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MERCEDES CRESPO, Defendant-Appellee.

Second District   No. 2—89—1106

Opinion filed January 24, 1991.—Rehearing denied March 4, 1991.

REINHARD, P.J., dissenting.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE DUNN delivered the opinion of the court:

The defendant, Mercedes Crespo, was indicted for unlawful possession of a controlled substance and unlawful possession of a controlled substance with intent to deliver. The trial court granted her

motion to suppress evidence seized by a police officer pursuant to a warrantless stop of the car that she was driving, and the State appeals. Because we cannot say that the trial court's finding of no probable cause to arrest was manifestly erroneous, we affirm.

The sole witness at the suppression hearing was Nikos Eliopoulos (the witness), a police officer with the City of Lake Forest. At the time of the hearing, the witness had been assigned to the Lake County Metropolitan Enforcement Group for two years. He testified that the organization's primary purpose was to investigate and arrest drug traffickers and that in his two years' work he had dealt with informants over a hundred times. The witness testified that at about 8:10 p.m. on June 30, 1989, he and other officers met with an informant at the old Belvidere Mall parking lot. The informant had charges pending against him in the Lake County circuit court and was working off those charges in his capacity as an informant. On cross-examination the witness stated that this was the first time the informant had been used "[a]s far as acting on information," but added on redirect that he had received intelligence from the informant before, though not for warrants or arrests. On recross the witness specified that he had received information from the informant five times before the present case but had never used that information to obtain a search warrant. Intelligence previously supplied by this informant did result in the arrest of one individual, but the informant had never before supplied information about a specific transaction that later resulted in an arrest.

The witness testified that at the June 30 meeting the informant stated that at 9 p.m. that evening a cocaine transaction would take place in the apartment building at the far west end of the left side of Ridge Road. The informant said that he had arranged to purchase a kilo of cocaine from a Latino named John and that either John or one of John's people would pick up the cocaine at the apartment building. The informant told the witness that at 9 p.m. a car would pull up in the parking lot on the west side of the building and that a Hispanic would exit the building and come out to the car with a packet of cocaine.

The informant did not know John's last name and could not otherwise identify him. He did not say whether he had had any previous transactions with John. John had told the informant that there was cocaine in the apartment complex, but the informant did not know how John knew this. The informant could not specify the apartment that had the cocaine or who lived in that apartment and did not tell the witness how he found out that John would pick up the cocaine at

that location. The police did identify the apartment complex as 2855 Ridge Road and had previously received intelligence that there was a large stash of cocaine in one of the apartments at that address.

At about 8:40 p.m., the police initiated surveillance of the apartment complex. The witness parked east of the building, and Agent Soltwisch and the informant sat in a car about 60 feet northwest of the parking lot. Between 8:40 and 9 p.m., the witness observed that two cars went west on Ridge Road toward the building and that neither entered the parking lot. At 9 p.m., he observed a maroon Nissan Sentra going west on Ridge Road. Shortly thereafter he heard from Soltwisch that this car pulled into the parking lot and parked there, facing west, and that a male subject exited the apartment building and approached the driver's door of the car. The witness drove west, turned around in the area of the car, and observed a male, apparently Hispanic, walking to the passenger side of the car while carrying a gray bag. After this man entered the car, the witness left the area and parked east of the apartment complex. About two or three minutes later, the witness heard from Soltwisch that the man had left the car and entered the building, that Soltwisch had not seen the gray bag, and that the car was going east on Ridge Road.

The witness then started to follow the car. While doing so, he heard from Soltwisch that the informant believed the car might be involved in a drug transaction but was unsure and that the informant could not say that the male Hispanic was the man who was to deliver the cocaine. The witness stopped the car, believing that the driver (who turned out to be the defendant) had just been involved in a drug transaction. After he stopped the car, he searched the interior and found a gray plastic bag containing cocaine. The witness testified at the hearing that nobody stopped or searched the male Hispanic who went from the apartment to the car and back again.

The trial judge granted the motion to suppress, explaining that the evidence failed to establish the informant's credibility and emphasizing that the informant himself could not say if the drug deal he had predicted had taken place. The State, certifying that the suppression order would substantially impair its ability to prosecute this case, has appealed.

■ The State argues that the trial court erred in holding that the totality of the circumstances failed to establish that there was probable cause to arrest the defendant. The State also argues that the warrantless stop and search of the car driven by the defendant were proper under *Terry v. Ohio* (1968), 392 U.S.1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. However, the prosecution never raised the latter theory at

trial, arguing only that the evidence at the hearing established probable cause for the warrantless arrest. We therefore do not consider the *Terry* argument here. See *People v. Adams* (1989), 131 Ill. 2d 387, 394-96.

▪ In determining whether there was probable cause for a warrantless arrest, a trial court is to apply standards at least as stringent as those that guide a magistrate in deciding whether to issue a warrant. Probable cause requires facts and circumstances within the arresting officer's knowledge sufficient to warrant a person of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. The probability of criminal activity, not evidence beyond a reasonable doubt, is required. (*People v. Tisler* (1984), 103 Ill. 2d 226, 236-37; *People v. LeCour* (1988), 172 Ill. App. 3d 878, 887.) A reviewing court will not disturb a trial court's finding on a motion to suppress unless that finding is manifestly erroneous. *People v. Adams*, 131 Ill. 2d at 400.

▪ Whether an informant's tip supplies the police with probable cause is to be determined under the totality of the circumstances. (*Illinois v. Gates* (1983), 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332; *People v. Tisler*, 103 Ill. 2d at 238.) As a result of *Gates*, it is no longer required that the facts establish both the informant's "basis of knowledge" and his "veracity," and a deficiency with respect to one of these elements may be overcome by a strong showing as to the other, or by other indicia of reliability such as corroboration of the details of the informant's story by independent police work. The informant's veracity and basis of knowledge are nonetheless still highly relevant to a determination of probable cause under the "totality-of-the-circumstances." *Gates*, 462 U.S. at 230-31, 76 L. Ed. 2d at 543-44, 103 S. Ct. at 2328; *Tisler*, 103 Ill. 2d at 240; *People v. Beck* (1988), 167 Ill. App. 3d 412, 417.

▪ Although the State here provided some evidence that the informant was reliable and that his tip was corroborated, there were also considerable weaknesses in both regards. In assessing the informant's credibility, the trial court could properly take into account that the police had never before used him to obtain information to be acted upon and that information he had previously supplied had been of value on only one of several occasions. Further impinging on the informant's credibility was the fact that he was supplying information in return for lessened punishment. (*People v. James* (1987), 118 Ill. 2d 214, 224, *cert. denied* (1988), 484 U.S. 1045, 98 L. Ed. 2d 866, 108 S. Ct. 780.) The informant was unable to provide specifics about any of the parties involved in the transaction that he told police that he had arranged.

■■ ■ The State is correct that the informant's story was corroborated in certain respects. The police did have some sort of information that cocaine was somewhere in the building. There was indeed a meeting, at the predicted time, between the driver of a car that entered the parking lot and a male Hispanic who exited the building. The trial judge quite reasonably found, however, that this corroboration was undermined by the informant's own inability to state that this meeting was the predicted transaction. The informant's uncertainty also cast doubt on his original basis for knowing that a drug transaction, as opposed to merely some sort of meeting, was to occur at that time and place. The general rule that an informant who is right about some things is more likely correct about other details, including the alleged illegal activity (*Gates*, 462 U.S. at 244, 76 L. Ed. 2d at 552, 103 S. Ct. at 2335; *Tisler*, 103 Ill. 2d at 238), is less compelling where the informant himself casts doubt on his correctness about the "other details." The trial judge was also entitled to question why, if the police had probable cause to believe that they had witnessed an illegal transaction, they apparently made no attempt to arrest one of the participants.

We therefore conclude that the grant of the motion to suppress was not manifestly erroneous. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

BOWMAN, J., concurs.

PRESIDING JUSTICE REINHARD, dissenting:

I respectfully dissent. Applying the "totality-of-the-circumstances" analysis set forth in *Illinois v. Gates* (1983), 462 U.S. 213, 230-31, 76 L. Ed. 2d 527, 543-44, 103 S. Ct. 2317, 2328, I would find sufficient corroboration of the informant's information to justify probable cause to make a warrantless arrest.

First, I note that the informant had on one prior occasion provided information to the police which ultimately led to an arrest. While the information provided did not concern a specific transaction which resulted in an arrest, the informant demonstrated at least a slight degree of reliability in the past. Under *Gates'* totality of the circumstances test, this is one factor to be considered in determining whether there was probable cause to arrest.

Second, the subsequent corroboration of the informant's information provided reliability to the informant's assertions. The informant told Officer Eliopoulos that a cocaine transaction would be conducted at a par-

ticular location, at a particular time, and in a particular way—a car would pull up to the west side of an apartment building in the parking lot; a Hispanic person would exit the building and come to the car with a packet of cocaine, and the cocaine would be given to a person, or his "mule," from whom the informant would later purchase the cocaine.

These details were corroborated by the police investigation. The car came to the parking lot of the apartment building designated by the informant; it arrived at 9 p.m., the time designated by the informant; and a Hispanic person came out of the apartment building and entered the car. While the cocaine was not visible to the police, the Hispanic person carried a gray bag in his hand and, several minutes later, left the car without the gray bag. Further, the police had intelligence that cocaine was stashed in one of the apartments in the apartment building.

Further, the informant's information contained many details relating not just to easily obtained facts and conditions existing at the time the information was given the police, but to future actions of third parties ordinarily not easily predicted. (See *Gates*, 462 U.S. at 245, 76 L. Ed. 2d at 552-53, 103 S. Ct. at 2335-36.) The accuracy of this information was such that it is likely the information was gained by the informant from someone familiar with the alleged illegal activities to provide an adequate "basis of knowledge." In this regard, the informant stated he was to purchase the cocaine from a person named John, who would be obtaining that cocaine from a Hispanic person at the precise time and location later corroborated by the police. John would then deliver the cocaine to the informant.

Based upon this substantial corroboration of the informant's detailed information, coupled with a degree of reliability in the informant, I would find, under *Gates*, sufficient veracity and a basis of knowledge to justify probable cause to arrest the defendant.

I note that two factors relied on by the majority to diminish the accuracy of the informant's information are of no consequence. Whether the police arrested the other individual involved in the transaction is irrelevant to the question of whether there was probable cause to arrest defendant. Similarly, the fact that the informant was not sure that the transaction observed was the same one which he had predicted does not detract from the accuracy of the information provided. The informant's information was not specific as to the precise identities of the parties to the transaction, so the informant's inability to determine whether the transaction observed was the one predicted is not inconsistent with his tip. Regardless of the identities of the parties involved, the information provided was corroborated in every detail.