THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENDRICK PEARSON, Defendant-Appellant.

First District (2nd Division)   No. 1—00—2928

Opinion filed May 21, 2002.

Rita A. Fry, Public Defender, of Chicago (Suzanne A. Isaacson, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Jeff Chan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:

Defendant appeals a bench trial verdict convicting him of robbery and aggravated battery and the 20-year and 5-year concurrent prison terms imposed. We affirm.

Beverly Ruiz, a 66-year-old woman, was unloading her groceries from her parked car in an alley behind her home about noon on October 12, 1998, when a man wearing a white T-shirt approached. The man asked Beverly what time it was. As she looked at her watch, the man grabbed her purse off her shoulder. Beverly was knocked to the ground in the struggle that followed. The man took the purse and left in a white car. Beverly noted the license plate number on the car and yelled for help. Andres and Parnell Ruiz, Beverly's husband and son, were at home and heard Beverly call for them. Beverly told them what happened and gave them the license plate number of the white car. Beverly called the police to report the robbery. Andres and Parnell left in the family car to look for the white car. They found it parked in front of a store about 15 minutes later. There was a woman inside the car. A man wearing a white T-shirt came out of the store, lit a cigarette and got into the car. Andres and Parnell followed the car but lost sight of it after the woman passenger was dropped off at 701 Christiana. Andres and Parnell looked at the man for about five minutes.

Beverly described to police the person who robbed her: a black man, about 5 feet 8 inches or 5 feet 9 inches tall and 25 years old. She estimated his weight as more than 200 pounds. He was clean-shaven and wore a white, short-sleeved T-shirt. Both Andres and Parnell described the person they saw as a black man with cornrow or braided hair.

Detective Michael Muzupappa investigated the case. He traced the license plate number to a woman who admitted owning a white Pontiac. She said that her husband, Tanner Riddle, drove the car. Muzupappa contacted Riddle on October 22. Riddle said that he had loaned the car to "Manard" on October 9 and that it was not returned until

October 13. Riddle gave Muzupappa "Manard's" phone number and "Manard's" sister's address at 714 N. Christiana. Muzupappa traced the phone number to an address at 205 N. Kolmar. Muzupappa and his partner went to that address on October 22, shortly before midnight.

Muzupappa and his partner identified themselves as police officers and asked the woman who answered the door if "Manard" was there. The woman let the officers inside and called out "Manard's" name. Defendant came out of a bedroom. Muzupappa noticed that defendant matched the description given by Beverly, Andres and Parnell. Defendant was then arrested. Defendant was 5 feet 9 inches, weighed 210 pounds and had braids in his hair at the time of his arrest.

Beverly, Andres and Parnell Ruiz separately identified defendant in a lineup on October 23. After the lineup identification, defendant told police that he had borrowed a white Pontiac from his sister's friend on October 11 and 12.

Defendant filed a motion to quash his warrantless arrest for lack of probable cause. Defendant also sought to suppress the lineup identification and statements as fruits of an illegal arrest. The motion was denied.

At trial, Beverly identified defendant as the person who robbed her on October 12. Andres and Parnell identified defendant as the man they saw get into the car with the license plate number matching the one Beverly gave them. Beverly said that she had a good opportunity to see defendant's face during the robbery.

Tanner Riddle testified that his wife owned a white Pontiac on October 12, 1998. He identified defendant as the person who borrowed the car in exchange for drugs. Riddle admitted on cross-examination that he was on a "binge high" when he loaned the car to defendant.

Defendant testified on his behalf that he was at a barbeque/baby shower at 139 North Waller on October 12. Defendant said he went to the shower with his mother, aunt, girlfriend and other family members. He drove to the shower in a brown and beige Buick. He arrived at the shower at 10 a.m. but left with his sister to buy drugs. He returned by 11:30 a.m. Defendant said he stayed at the shower until 9 p.m. and left in his own car. Defendant admitted selling drugs to Riddle before, but said he had only seen Riddle in a green car, not a white one. Defendant admitted using the green car in September 1998, in exchange for $10. Defendant denied robbing anyone on October 12 and described his hair as french braids, not cornrows. He also denied that he smoked cigarettes.

Christy, defendant's sister, testified that defendant was at the baby shower all day and left only to buy drugs with her. She did not see him

driving a white car that day, only his brown Buick. She also denied that defendant smoked cigarettes.

Defendant's mother Jane Winn testified that her daughter Rhonda lived at 714 Christiana and was dating Lawrence Sanders. Sanders was about 5 feet 8 inches tall, weighed 210 to 215 pounds and had braids in his hair. Winn said that defendant drove her and other family members to a baby shower on October 12. She said that, except for leaving for a short time in the morning, defendant was at the shower all day from noon until the evening. Defendant drove a brown Buick. Winn said that defendant did not smoke and that he had a goatee. Winn knew who Riddle was but said that defendant never drove Riddle's white car.

Defendant's sister Rhonda testified that she used to smoke cocaine with Riddle. She lived at 714 Christiana with her boyfriend, Lawrence Sanders. Rhonda, Riddle and Lawrence were at her house on October 12. Lawrence left in Riddle's white car and has not been seen since.

The trial court found defendant guilty of both robbery and aggravated battery. He was sentenced to 20 years for robbery and received a concurrent 5-year term for aggravated battery.

Defendant raises four arguments on appeal: (1) his motion to quash arrest and suppress evidence should have been granted; (2) the evidence was insufficient to support a guilty verdict beyond a reasonable doubt; (3) a 20-year sentence for robbery was excessive; and (4) defendant was improperly convicted of both aggravated battery and robbery.

■ Defendant first contends that his warrantless arrest was unsupported by probable cause and should have been quashed. Defendant claims that his postarrest statements and lineup identification should have been suppressed as fruits of an illegal arrest. A suppression hearing is traditionally reviewed for manifest error. *People v. Johnson*, 182 Ill. 2d 96, 108, 695 N.E.2d 435 (1998). But where, as here, neither the credibility of witnesses nor facts are contested, our review is *de novo*. *People v. Chapman*, 194 Ill. 2d 186, 208, 743 N.E.2d 48 (2000). Defendant here accepts the State's evidence. We consider *de novo* the trial court's legal conclusion that the facts supported a finding of probable cause. *Chapman*, 194 Ill. 2d at 208.

■ A police officer must have probable cause to effect a valid, warrantless arrest. *People v. Sims*, 192 Ill. 2d 592, 614, 736 N.E.2d 1048 (2000). Probable cause exists where the facts and circumstances known to a police officer at the time of the arrest are sufficient to warrant a person of reasonable caution to believe that a crime was committed and that the crime was committed by the person arrested. *Sims*, 192 Ill. 2d at 614. The existence of probable cause is determined by the

totality of the circumstances at the time of the arrest. *People v. Tisler*, 103 Ill. 2d 226, 469 N.E.2d 147 (1984). The determination is governed by common-sense and practical considerations, not legal technical rules. *People v. Buss*, 187 Ill. 2d 144, 204, 718 N.E.2d 1 (1999). The emphasis is on the facts known by police at the time the arrest was made. *Buss*, 187 Ill. 2d at 204. Although mere suspicion is inadequate to create probable cause, the evidence relied on does not have to prove guilt beyond a reasonable doubt. *Sims*, 192 Ill. 2d at 614-15.

■ The crux of defendant's argument is that his arrest was based solely on the questionable information given by Tanner Riddle, whose veracity was not independently known to the police. Defendant contends that, under a totality of the circumstances, Riddle was a more likely suspect and the police "should have done more to exclude" him as a suspect. Defendant fails to cite a case to support the argument that police have a duty to exclude from suspicion persons interviewed in the course of an ongoing investigation. Defendant overlooks that "courts have not ruled that an arrest can occur only when the known facts indicate that it is more probable than not that the suspected individual has committed the crime." *People v. Lippert*, 89 Ill. 2d 171, 179, 432 N.E.2d 605 (1982), citing 1 W. LaFave, Search and Seizure § 3.2, at 478-85 (1978). We believe the totality of the circumstances here shows that, at the time of the arrest, the police had probable cause to believe that a crime had been committed and that defendant was the offender.

Detective Muzupappa testified that he interviewed the victim and received a description of the offender and a license plate number of the car he was driving. A check of the plate number led Muzupappa to Tanner Riddle, whose wife was the registered owner of the car. Riddle told Muzupappa that he had loaned the car to defendant on the date in question. Riddle gave Muzupappa defendant's nickname and a phone number. Riddle also gave Muzupappa defendant's sister's address. A trace of the phone number led police to defendant's house. Muzupappa arrested defendant when defendant answered to the nickname Muzupappa was given and, most importantly, defendant matched the description of the offender as related by the victim. The warrantless arrest here was proper.

Defendant cites to three cases for an opposite conclusion, each of which is distinguishable. In *People v. Sturdivant*, 99 Ill. App. 3d 370, 425 N.E.2d 1046 (1981), we found that a single statement linking the defendant to a shooting was insufficient to establish probable cause where the statement was made by a prison inmate and could not be independently corroborated. *Sturdivant*, 99 Ill. App. 3d at 373-74. In *People v. Adams*, 131 Ill. 2d 387, 546 N.E.2d 561 (1989), a confidential

informant's tip was insufficient to establish probable cause where the information was too vague and uncorroborated. *Adams*, 131 Ill. 2d at 400-01. In *People v. Crespo*, 207 Ill. App. 3d 947, 566 N.E.2d 496 (1991), there was no probable cause where an informant's tip had "considerable weaknesses" in both reliability and corroboration. *Crespo*, 207 Ill. App. 3d at 951. In each of these cases, the informant's reliability and/or credibility was at issue and we reviewed the trial court's orders for manifest error. *Sturdivant*, 99 Ill. App. 3d at 373-75; *Adams*, 131 Ill. 2d at 400; *Crespo*, 207 Ill. App. 3d at 951. But here, defendant did not challenge the State's evidence. A *de novo* standard of review on appeal is appropriate. Riddle's reliability or credibility is not at issue. The only issue here is the propriety of the legal conclusion that the uncontested facts support a finding of probable cause, justifying a warrantless arrest. We conclude that they do. The motion to quash arrest was properly denied. We do not consider whether the postarrest statements and lineup identification should be suppressed because the arrest was supported by probable cause. *People v. Segoviano*, 189 Ill. 2d 228, 244, 725 N.E.2d 1275 (2000).

Defendant next challenges the sufficiency of the evidence supporting his convictions. Defendant claims that his identity as the offender was not proven beyond a reasonable doubt.

■ The relevant question raised when presented with a challenge to the sufficiency of the evidence is whether a rational trier of fact could find the elements of an offense beyond a reasonable doubt. *People v. Schmalz*, 194 Ill. 2d 75, 80, 740 N.E.2d 775 (2000). We will not retry a defendant, nor will we set aside a criminal conviction unless the evidence is so improbable that a reasonable doubt of guilt is created. *Schmalz*, 194 Ill. 2d at 80.

Defendant here claims that his alibi evidence, previously set out, was improperly disregarded in favor of the only evidence contradicting it, identification of defendant as the offender. Defendant concludes that this uncontradicted alibi evidence creates a reasonable doubt of guilt when compared to the State's identification testimony, which defendant claims has "considerable weaknesses." We disagree.

■ The "considerable weaknesses" to which defendant refers are the lineup identifications made more than a week after the robbery, the victim's failure to include in her description to the police that the offender had a goatee, and the possibility that Riddle's drug binge made it unlikely that he was recalling events accurately. Each of these "weaknesses" relates to conflicts in the evidence, which are for the trier of fact to resolve. *People v. Hall*, 194 Ill. 2d 305, 331, 743 N.E.2d 521 (2000). The trier of fact here determined that these "weaknesses" were not so "considerable"—a finding that will not be revisited on appeal.

■ The only case cited to support defendant's argument that his alibi evidence was improperly considered, *People v. Gardner*, 35 Ill. 2d 564, 221 N.E.2d 232 (1966), is distinguishable. In *Gardner*, our supreme court found that, although a single witness's positive and credible identification will generally support a conviction, the complaining witness's identification in that case was doubtful, vague and uncertain, while the alibi evidence was positive and unimpeached. *Gardner*, 35 Ill. 2d at 571. The complaining witness's description of the offender given after the crime differed from the description given at trial and was inconsistent with the defendant's appearance at the time of his arrest. *Gardner*, 35 Ill. 2d at 571-72. The lack of a lineup identification also adversely affected the strength of the identification. *Gardner*, 35 Ill. 2d at 572.

By contrast, here there is no discrepancy between the description given by the victim after the crime and her testimony at trial. Defendant was selected out of a lineup as the offender by the victim, her husband and son. Riddle's description of defendant was consistent with that given by the victim. A rational trier of fact could have found the elements of robbery and aggravated battery beyond a reasonable doubt.

Defendant next contends that a 20-year sentence for robbery is excessive and shows that the trial court failed to consider defendant's rehabilitative potential. Defendant also claims that the sentence suggests that the trial court improperly considered in aggravation the age of the victim, a factor implicit in the offense.

■ Imposition of a sentence is a matter of judicial discretion that will not be disturbed absent an abuse of that discretion. *People v. Perruquet*, 68 Ill. 2d 149, 153, 368 N.E.2d 382 (1977). A sentence within the permissible statutory range will not be deemed excessive unless it varies with the spirit of the law or is disproportionate to the nature of the offense. *People v. Spencer*, 303 Ill. App. 3d 861, 871, 709 N.E.2d 867 (1999).

Defendant here concedes that his conviction for robbery of a person over the age of 60 was a Class 1 felony (720 ILCS 5/18—1(b) (West 2000)) and that his criminal background subjected him to a Class X sentencing range of 6 to 30 years (730 ILCS 5/5—5—3(c)(8) (West 2000)). Defendant claims that his earlier convictions relating to property, not violent offenses, coupled with his rehabilitative potential, do not support a 20-year sentence for what amounts to a purse snatching. Defendant also claims that the trial court improperly considered the victim's age, an element of the offense, in aggravation.

A trial court is in a superior position to assess the credibility of witnesses and weigh evidence submitted at a sentencing hearing.

*People v. Jones*, 168 Ill. 2d 367, 373, 659 N.E.2d 1306 (1995). We will not reweigh the evidence considered on appeal. *People v. Coleman*, 166 Ill. 2d 247, 261-62, 652 N.E.2d 322 (1995). The record here shows that the trial court carefully considered both mitigating and aggravating factors and arrived at a balance between society's need for protection and defendant's rehabilitative potential. *Spencer*, 303 Ill. App. 3d at 871. Among defendant's earlier offenses was a conviction for robbery of a person over age 60, the same offense for which he was convicted here. Although the rehabilitative evidence submitted in mitigation demonstrated defendant's ability to maintain a job and a strong family relationship, rehabilitative potential need not be given greater weight than the nature of the offense. *Coleman*, 166 Ill. 2d at 261.

■ The State argues that defendant waived the issue of whether the trial court improperly considered the victim's age in aggravation by failing to raise the issue in his postsentencing motion. *People v. Reed*, 177 Ill. 2d 389, 393-95, 686 N.E.2d 584 (1997). We agree and review the issue for plain error. *People v. Smith*, 183 Ill. 2d 425, 430, 701 N.E.2d 1097 (1998).

We disagree that the victim's age was an element of the offense of robbery. The elements of robbery are set out in section 18—1(a) of the Criminal Code of 1961 (720 ILCS 5/18—1(a) (West 2000)). Age is not listed. Age is mentioned in section 18—1(b), which relates to sentencing. If the victim of a robbery is over the age of 60 or physically handicapped, the robbery will be sentenced as a Class 1 felony. 720 ILCS 5/18—1(b) (West 2000). Recognition of the victim's age here was necessary to establish defendant's qualification for Class 1 sentencing.

■ Even if the victim's age was considered in aggravation, which is not clear from the record, a remand for resentencing is not necessary. Reliance on an improper factor in aggravation does not always require a remand for resentencing. Where it can be determined that the weight placed on the improper factor was so insignificant that it did not lead to a greater sentence, remand is unnecessary. *People v. White*, 114 Ill. 2d 61, 67, 499 N.E.2d 467 (1986).

In sentencing defendant the court said:

> "The defendant's background is, to put it mildly, abysmal, for the offenses of robbery. *** In considering all those factors, statutory factors set out, and the facts of this particular case, the injury was not a serious injury; the—one of the factors in aggravation is to prevent others from committing the same crime. I don't know if that applies in any of these cases or not. One of the other factors was that it was committed against a person 60 years of age or older. The other factor, obviously—or other factors obviously is the defendant's prior criminal activity."

These comments demonstrate that the victim's age was considered, if at all, in passing. The court's primary focus, based on these comments, was defendant's "abysmal" criminal background, which included a conviction for the same offense at issue here. The court's recognition of the victim's age while imposing sentence did not lead to imposition of a greater sentence. A 20-year sentence for robbery, near the middle of the applicable sentencing range, is not an abuse of discretion under this record. The sentence follows the spirit of the law and is not disproportionate to the nature of the offense. *Spencer*, 303 Ill. App. 3d at 871.

■ Defendant last argues that his conviction for aggravated battery must be vacated where it is based on the same act as his conviction for robbery, violating the one-act, one-crime rule established in *People v. King*, 66 Ill. 2d 551, 566, 363 N.E.2d 838 (1977). Defendant concedes that this issue is waived because no objection to a sentence on the aggravated battery conviction was made at the sentencing hearing. *People v. Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988). We review the issue for plain error as defendant's substantial rights are affected. *Smith*, 183 Ill. 2d at 430.

■ Defendant's argument that the robbery and aggravated battery convictions arise from the same physical act is premised on a six-factor test enunciated in *People v. Baity*, 125 Ill. App. 3d 50, 465 N.E.2d 622 (1984). The test considers the presence of an intervening event, the interval of time between the defendant's actions, identity of the victim, location and similarity of the act, and the prosecutorial intent reflected in the charging instrument. *Baity*, 125 Ill. App. 3d at 52-53. This test is a culmination of points gleaned from cases interpreting *King*. *People v. Crespo*, 203 Ill. 2d 335, 342 (2001). Our supreme court has acknowledged the existence of the test but declined to address its merits. *People v. Rodriguez*, 169 Ill. 2d 183, 188, 661 N.E.2d 305 (1996); *Crespo*, 203 Ill. 2d at 342. The court has cautioned against losing "sight of the forest for the trees" and reiterated that the definition of an "act" under *King* remains what the court said in *King*: " 'any overt or outward manifestation which will support a different offense.' " *Rodriguez*, 169 Ill. 2d at 188, quoting *King*, 66 Ill. 2d at 566. With these principles in mind, we conclude that the robbery and aggravated battery were separate acts.

An analysis under *King* requires two steps. We first determine whether defendant's conduct was a single physical act or consisted of separate acts. *Rodriguez*, 169 Ill. 2d at 186. If we determine that defendant committed separate acts, we then consider whether the multiple convictions are lesser included offenses. *Rodriguez*, 169 Ill. 2d at 186. Multiple convictions are improper only where there is a

single physical act or the convictions arise from lesser included offenses. *Rodriguez*, 169 Ill. 2d at 186.

Defendant argues that taking the victim's purse and knocking her to the ground amounts to a single physical act that supports only a robbery conviction. The argument overlooks the narrow definition of "act" adopted in *King*. *Crespo*, 203 Ill, 2d at 341 ("this court again looked to *King*, interpreting the definition of an 'act' narrowly").

Defendant's argument is like that rejected by the court in *People v. Dixon*, 91 Ill. 2d 346, 438 N.E.2d 180 (1982). The defendant in *Dixon* conceded that he repeatedly struck the victim with a club, but contended that the *King* definition of "act" encompassed a continuous act where there is no change in the nature or severity of the act. *Dixon*, 91 Ill. 2d at 355. The court disagreed, noting that the *King* definition of "act" abandoned the earlier "independent motivation" test, which could support the defendant's claim. *Dixon*, 91 Ill. 2d at 355. The court found that the repeated striking of the victim with a club, "though closely related, [was] not one physical act" under *King* and supported convictions for both aggravated battery and mob action. *Dixon*, 91 Ill. 2d at 356.

Here, defendant contends that the victim was knocked to the ground in the course of a single continuous act—robbery. We disagree. Although closely related, taking the purse and then pushing the victim to the ground are separate acts. Two separate acts do not become one solely because of proximity in time. *People v. Myers*, 85 Ill. 2d 281, 287-88, 426 N.E.2d 535 (1981) (two cuts with a knife to the same victim in the same area were not one physical act). We conclude that the act of taking the purse and the act of pushing the victim to the ground were overt outward manifestations that support the offenses of robbery and aggravated battery.

Defendant's reliance on *People v. Keefer*, 229 Ill. App. 3d 582, 593 N.E.2d 1109 (1992), is unpersuasive. In *Keefer*, the defendant was charged with aggravated battery and resisting a peace officer. *Keefer*, 229 Ill. App. 3d at 583. We vacated the conviction for resisting a peace officer, concluding that the conviction arose from the same struggle that gave rise to the aggravated battery conviction. *Keefer*, 229 Ill. App. 3d at 584. We decline to follow *Keefer* because the analysis in that case failed to discuss or consider the *King* definition of "act" and the treatment of that interpretation in subsequent cases. The case instead considered three of the factors referenced in *Baity*, although that case was not cited.

We now consider whether the aggravated battery is a lesser included offense of robbery. An offense is a lesser included offense if described by the charging instrument. *People v. McLaurin*, 184 Ill. 2d

58, 104, 703 N.E.2d 11 (1998). The instrument charging the greater offense must set out the main outline of the lesser offense. *McLaurin*, 184 Ill. 2d at 104-05.

The information charging robbery here states:

"[T]hat on or about October 12, 1998, *** [defendant] committed the offense of robbery in that he, by use of force or by threatening the imminent use of force, took a purse."

The information charging aggravated battery states:

"[T]hat on or about October 12, 1998, *** [defendant] committed the offense of aggravated battery in that he, intentionally or knowingly without legal justification caused bodily harm to [the victim] to wit: in grabbing her purse knocked [the victim] to the ground."

The robbery charge does not set out the required mental state to support an aggravated battery conviction. 720 ILCS 5/12—3 (West 2000). The aggravated battery is not a lesser included offense of robbery. *McLaurin*, 184 Ill. 2d at 105. Both convictions and sentences may stand. *King*, 66 Ill. 2d at 566.

The judgment of the trial court is affirmed.

Affirmed.

BURKE, P.J., and GORDON, J., concur.