2017 IL App (1st) 151312
No. 1-15-1312
Opinion filed October 17, 2017

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 4124 |
| | ) | |
| STEVIE SMITH, | ) | Honorable |
| | ) | Michele M. Pitman, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Neville and Justice Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1 Following simultaneous but severed bench trials, defendant Stevie Smith and codefendant Jerry Brown were convicted of robbery and aggravated battery of a senior citizen (Brown is not a party to this appeal). Smith was sentenced to consecutive prison terms of 12 years and 6 years, respectively. On appeal, Smith contends only that his conviction for aggravated battery of a senior citizen should be vacated because it violates the one-act, one-crime doctrine where it is based on the same single physical act as his robbery conviction.

¶ 2 We agree and vacate the aggravated battery of a senior citizen conviction. On this record, we hold that the one-act, one-crime principle was violated, as the basis for both convictions—

robbery and aggravated battery of a senior citizen—was Smith's single physical act of punching Burtner.

¶ 3                                        Background

¶ 4     Smith and Brown were tried on charges of first degree murder, aggravated battery of a senior citizen, robbery, and aggravated battery. At trial, Deborah Halloran testified that William Burtner was the commander of the Veterans of Foreign Wars (VFW) post in Midlothian, where she was employed as the bar manager. At about 9:30 a.m. on November 16, 2009, Burtner and Halloran prepared money for deposit into four accounts the VFW maintained at the local A.J. Smith Bank. Deposits for three accounts were placed into three bank deposit bags. An additional amount was placed inside a cigar box so Burtner could open a new account. Burtner left the VFW post with the three deposit bags and the cigar box and drove to the bank.

¶ 5     A teller at the A.J. Smith Bank, Connie Weimar, testified that at about 10:15 a.m. on November 16, she looked out the window and saw Burtner walking towards the bank carrying bank deposit bags in his hand. As Burtner approached the entrance, he passed behind a wall and Weimar lost sight of him. Weimar next saw a man wearing a hooded sweatshirt walking quickly past the front of the bank towards Burtner. The hood covered the man's head and Weimar could not see his face. Nothing was in the man's hands. The man disappeared from Weimar's sight for "a matter of seconds." When she next saw him, he was carrying something in his hand, had turned around, and was running to the adjacent Wendy's parking lot. He got into the front passenger seat of a black car that then took off. Weimar yelled "Call 911." Two bank employees brought Burtner inside the bank and sat him down in a chair. Later, the man wearing the hooded sweatshirt was determined to be Smith.

¶ 6    Tamara Esposito was at the bank when her supervisor yelled "Call 911, I believe somebody was just robbed." Esposito went to the front door and saw Burtner on the ground outside. Esposito and a security guard went outside and helped Burtner. He asked Esposito to retrieve a cigar box from the ground, which contained money and checks. Esposito saw a black sports car speeding out of the Wendy's parking lot. Esposito and the security guard brought Burtner inside the bank. Burtner was slightly bent over and holding his left side near his rib cage, had labored breathing, and was experiencing difficulty speaking. Burtner told Esposito that he was punched in his left side.

¶ 7    Paramedic Cory Katsibubas treated Burtner at the bank. Burtner was holding his left side in his back rib area. Burtner complained of pain in that area and also pain when taking deep breaths. Katsibubas administered oxygen and transported Burtner to the hospital. The State presented a stipulation that Burtner told Katsibubas that "he was hit from behind, and he fell."

¶ 8    Meanwhile, a high-speed police chase of the black car, driven by codefendant Brown, had ensued. Smith and Brown crashed into another vehicle and came to a stop. They ran from the black car in opposite directions. Minutes later, police found Brown hiding underneath a vehicle in a backyard and placed him in custody. During a custodial search, police recovered over a thousand dollars from his right pocket. The A.J. Smith bank deposit bags and money were found inside the black car. Blood samples taken from the passenger's side of the black car were submitted to the Illinois State Police crime laboratory for testing. Results of that testing indicated a DNA match with Smith, and he was arrested on February 5, 2010.

¶ 9    Mary Burtner, William's wife, testified that her husband was treated and released from the hospital on the day of the robbery. When he returned home, he was in a lot of pain,

uncomfortable, and favoring his left side. The next day, he felt worse. The following morning, November 18, although still in a lot of pain, he went to chemotherapy for his lung cancer. At the hospital, he was unable to walk due to his pain and needed a wheelchair. When the couple arrived home at about 3 p.m., her husband was still holding his left side and was unable to get out of the car. She assisted him into their home and to bed. He fell asleep. She checked on him, and around 8:30 p.m., she found her husband unresponsive and called 911.

¶ 10    Paramedics arrived. Burtner was unresponsive, not breathing, and had no pulse or blood pressure. Paramedics performed CPR, administered cardiac medications, and transferred him to the hospital. There were no signs of life. The State presented the death certificate indicating that Burtner was 65 years old at death.

¶ 11    An assistant chief medical examiner, Dr. Ponni Arunkumar, performed an autopsy. Burtner suffered from lung cancer, two prior heart attacks, and heart disease and had three fractured ribs on the left side of his chest wall. The rib fractures were less than three or four days old and were consistent with being punched. Dr. Arunkumar determined that the cause of death was hypertensive cardiovascular disease with, as a significant contributing factor to the heart attack, the fractured ribs due to an assault. In her opinion the cause of death was homicide.

¶ 12    The trial court found that the State failed to prove that Smith and Brown caused Burtner's death and so found them not guilty of first degree murder. The trial court, however, found that defendants "certainly" inflicted great bodily harm on Burtner and, therefore, found both men guilty of aggravated battery of a senior citizen. The trial court also found defendants guilty of robbery and aggravated battery. The aggravated battery counts were merged into the aggravated

battery of a senior citizen offense. As Burtner was over the age of 60, the trial court ruled that the robbery offense was elevated from Class 2 to a Class 1 felony.

¶ 13    The trial court sentenced Smith to 12 years' imprisonment for robbery and a consecutive term of 6 years' imprisonment for aggravated battery of a senior citizen. The court expressly stated that Smith's criminal history and the nature and circumstances of the offense required consecutive sentences to protect the public from further criminal conduct by Smith.

¶ 14                                    Analysis

¶ 15    Smith contends only that his conviction for aggravated battery of a senior citizen should be vacated because it violates the one-act, one-crime doctrine where it is based on the same single physical act as his robbery conviction. Smith argues that the only evidence of a physical act committed against Burtner was the single punch that resulted in fractured ribs. Smith also argues that the single punch cannot serve as the basis for both the aggravated battery and the force element for the robbery.

¶ 16    The State responds that the one-act, one-crime doctrine was not violated because Smith committed two separate acts. The State asserts that the punch was one act and the taking of the deposit bags was a separate act. The State contends that the common act of the punch can serve as the basis of both offenses because there was another separate act for the robbery.

¶ 17    As a threshold matter, Smith acknowledges that he forfeited this issue for appeal as he failed to object to the multiple convictions at trial and did not raise the issue in his posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). The parties agree, however, that our supreme court has repeatedly ruled that a one-act, one-crime violation is reviewable under the

second prong of the plain error doctrine because it affects the integrity of the judicial process. *In re Samantha V.*, 234 Ill. 2d 359, 378-79 (2009). Hence, we will consider the issue.

¶ 18    Whether a conviction should be vacated under the one-act, one-crime doctrine is a question of law, which we review *de novo*. *People v. Johnson*, 237 Ill. 2d 81, 97 (2010). Under this rule, Smith cannot be convicted of multiple offenses that are based on precisely the same single physical act, and where he is convicted of two such offenses, the conviction for the less serious offense must be vacated. *Id.* Our supreme court has defined an "act" as "any overt or outward manifestation which will support a different offense." *People v. King*, 66 Ill. 2d 551, 566 (1977).

¶ 19    In clarifying the one-act, one-crime rule from *King*, the supreme court explained that a court must first determine whether Smith's conduct consisted of a single physical act or separate acts. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). A defendant can be convicted of two offenses where a common act is part of both crimes. *Id.* at 188. But, where two offenses share a common act, there must be another separate act to sustain the two convictions. See *id.* at 188-89. " 'As long as there are multiple acts *as defined in King*, their interrelationship does not preclude multiple convictions ***.' (Emphasis added.)" *Id.* at 189 (quoting *People v. Myers*, 85 Ill. 2d 281, 288 (1981)).

¶ 20    The State charged Smith with robbery for taking money from Burtner by the use of force or by threatening the imminent use of force. 720 ILCS 5/18-1(a) (West 2008). The aggravated battery of a senior citizen offense alleged that Smith intentionally and knowingly caused great bodily harm to Burtner, a person 60 years of age or older, by striking him about the body, causing injuries. 720 ILCS 5/12-4.6(a) (West 2008).

¶ 21    The record reveals that the evidence presented at trial demonstrated that Smith committed one single physical act—a single punch to Burtner's left side. The only evidence of any act by Smith was Esposito's testimony that Burtner told her that he was punched in his left side and the State's stipulation that Burtner told paramedic Katsibubas that "he was hit from behind, and fell." The single punch was used as the basis for the aggravated battery conviction and as the element of force for the robbery conviction. There was no evidence of any other use of force or threat of force by Smith. There was no evidence of a verbal threat. Indeed, because Burtner was punched from behind, he was likely unaware that Smith was approaching him. Based on this record, we find that Smith committed only one single physical act.

¶ 22    We note that the State asserts that the taking of the money from Burtner constituted a separate physical act for the robbery and, thus, the two convictions may stand. The State primarily relies on this court's decision in *People v. Pearson*, 331 Ill. App. 3d 312 (2002), which it claims is directly on point. In *Pearson*, the defendant grabbed a woman's purse off her shoulder. *Id.* at 314. A struggle ensued, and the woman was knocked to the ground. *Id.* The defendant was convicted of both robbery and aggravated battery. *Id.* at 316. On appeal, this court found that the two convictions did not violate the one-act, one-crime doctrine, as the defendant committed two separate physical acts—he took the woman's purse, and he then pushed her to the ground. *Id.* at 322.

¶ 23    We find the facts of this case distinguishable from *Pearson*. There, the act of grabbing the woman's purse off her shoulder was, in and of itself, a taking of property by force. Pearson's subsequent act of pushing the woman to the ground was a separate act. Here, however, the evidence demonstrates that Smith committed only one physical act, the punch. There was no evidence that Smith used another act of force to take the money from Burtner. There is no

evidence explaining how the taking occurred. There is no evidence of a struggle over the deposit bags nor any evidence that Smith forcefully removed them from Burtner's hand. It is possible that Burtner dropped the bags after he was punched and fell to the ground, as he apparently did with the cigar box. Accordingly, *Pearson* does not apply to this case.

¶ 24    Based on this record, we find that Smith's convictions for robbery and aggravated battery of a senior citizen were both based on Smith's single physical act of punching Burtner. The two convictions therefore violate the one-act, one-crime principle and cannot stand. The aggravated battery of a senior citizen offense is a Class 2 felony and, thus, is less serious than the robbery of a senior citizen, which was elevated to Class 1.

¶ 25    We vacate the aggravated battery of a senior citizen conviction and affirm Smith's conviction and sentence for robbery.

¶ 26    Affirmed in part and vacated in part.