# Illinois Official Reports

## Appellate Court

*People v. Brown*, 2018 IL App (1st) 151311-B

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JERRY BROWN, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-15-1311 |
| Filed | June 14, 2018 |
| Rehearing denied | July 13, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-4124; the Hon. Michele M. Pitman, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Christopher Kopacz, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Marci Jacobs, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justices Neville and Pucinski concurred in the judgment and opinion. |

¶ 1 We vacate defendant Jerry Brown's conviction for aggravated battery of a senior citizen under the one-act, one-crime rule because we conclude that a single punch was used as the basis for the aggravated battery conviction and as the element of force for the robbery conviction, without evidence of other use of force, threat of force, or verbal threat.

¶ 2 This case comes before us again (*People v. Brown*, 2017 IL App (1st) 151311-U), after the Illinois Supreme Court denied Brown's petition for leave to appeal and entered a supervisory order directing us to vacate the order and consider the effect of *People v. Coats*, 2018 IL 121926, on the issue of whether Brown's convictions for robbery and aggravated battery of a senior citizen violate the one-act, one-crime rule. *People v. Brown*, No. 123080 (Ill. Mar. 21, 2018) (supervisory order).

¶ 3                                    Background

¶ 4 Brown and Stevie Smith were tried on charges of first degree murder, aggravated battery of a senior citizen, robbery, and aggravated battery. At trial, Deborah Halloran testified that she managed the bar at the Veterans of Foreign Wars (VFW) post in Midlothian, where William Burtner served as the commander. At about 9:30 a.m. on November 16, 2009, Burtner and Halloran prepared money for deposit into four accounts the VFW maintained at A.J. Smith Bank. Three bank deposit bags held deposits for three separate accounts. An additional amount was placed inside a cigar box for Burtner to open a new account. Burtner left the VFW post with the three deposit bags and the cigar box and drove to the bank.

¶ 5 A teller at A.J. Smith Bank, Connie Weimar, testified that, at about 10:15 a.m., she looked out the window and saw Burtner walking toward the bank carrying bank deposit bags in his hand. As Burtner approached the entrance, he passed behind a wall, and Weimar lost sight of him. Next, Weimar saw a man wearing a hooded sweatshirt quickly walking past the front of the bank toward Burtner. The hood covered the man's head, and Weimar could not see his face. The man had nothing in his hands. The man disappeared from Weimar's sight for "a matter of seconds." When next she saw him, the man held something in his hands, had turned around, and was running to the adjacent Wendy's parking lot. There, he entered the front passenger seat of a black car, which drove off, headed north. Weimar yelled, "Call 911." Two bank employees brought Burtner inside the bank and sat him down in a chair. Later, Smith was determined to be the man wearing the hooded sweatshirt.

¶ 6 Tamara Esposito heard her supervisor yell, "Call 911, I believe somebody was just robbed." Esposito went to the front door and saw Burtner on the ground outside. Esposito and a security guard helped Burtner, who asked Esposito to retrieve a cigar box, which contained money and checks. Esposito saw a black sports car speeding out of the Wendy's parking lot. Esposito and the security guard brought Burtner inside and sat him down in a chair. Burtner was slightly bent over and holding his left side near his rib cage. His breathing was labored, and he had difficulty speaking. Burtner told Esposito that he was punched in his left side.

¶ 7 Paramedics treated Burtner at the bank. Burtner was holding his left side in his back rib area. Burtner complained of pain in that area and also experienced pain when taking deep breaths. Paramedics transported Burtner to the hospital. The State presented a stipulation that Burtner told a paramedic that "he was hit from behind, and he fell."

¶ 8        Meanwhile, a high-speed police chase of the black car, driven by Brown, had ensued. Brown and Smith crashed into another automobile and came to a stop. They ran in opposite directions. Minutes later, police found Brown hiding underneath a car in a backyard and placed him in custody. During a custodial search, police recovered cash from his right pocket. The A.J. Smith bank deposit bags and money were found inside the car. The Illinois State Police crime laboratory tested blood samples taken from the passenger's side of the black car. The results indicated a DNA match with Smith. He was arrested on February 5, 2010.

¶ 9        Mary Burtner, William's wife, testified that her husband was treated and released from the hospital on the day of the robbery. When he returned home, he was in a lot of pain, uncomfortable, and favoring his left side. The next day, he felt worse. The following morning, November 18, although still in a lot of pain, he went to his chemotherapy appointment for treatment of lung cancer. At the hospital, he couldn't walk due to his pain and needed a wheelchair. When the couple arrived home at about 3 p.m., Burtner was still holding his left side and was unable to get out of the car. Mary assisted him into their home and into bed. Burtner fell asleep, and Mary checked on him. At about 8:30 p.m., she found her husband unresponsive and called 911.

¶ 10        When paramedics arrived, Burtner was unresponsive, was not breathing, and had no pulse or blood pressure. Paramedics performed CPR, administered cardiac medications, and transferred him to the hospital. There were no signs of life. The State presented Burtner's death certificate indicating that he was 65 years old.

¶ 11        An assistant chief medical examiner, Dr. Ponni Arunkumar, performed an autopsy on Burtner. He determined that Burtner suffered from lung cancer, two prior heart attacks, and heart disease. She found that Burtner had three fractured ribs on the left side of his chest wall. The rib fractures had occurred less than three or four days earlier and were consistent with being punched. Dr. Arunkumar concluded that Burtner's cause of death was hypertensive cardiovascular disease. The fractured ribs, which were due to an assault, constituted a significant contributing factor of Burtner suffering a heart attack. In her opinion, Burtner's cause of death was homicide.

¶ 12        The trial court held that the State failed to prove that defendants caused Burtner's death and concluded that defendants were not guilty of first degree murder. The trial court, however, found that defendants "certainly" inflicted great bodily harm on Burtner and pronounced them guilty of aggravated battery of a senior citizen. The court also found defendants guilty of robbery and aggravated battery. The aggravated battery counts were merged into the aggravated battery of a senior citizen offense. As Burtner was over the age of 60, the trial court elevated the robbery offense from Class 2 to a Class 1 felony.

¶ 13        The trial court sentenced Brown to 15 years' imprisonment for robbery and a consecutive term of 7 years' imprisonment for aggravated battery of a senior citizen. Brown was convicted as an accomplice. The trial court expressly stated that, based on Brown's criminal history and character and the nature and circumstances of the offense, consecutive sentences were required to protect the public from further criminal conduct by Brown.

¶ 14        Analysis

¶ 15        Brown contends that his conviction for aggravated battery of a senior citizen should be vacated as in violation of the one-act, one-crime rule because it is based on the same single physical act as his robbery conviction. Brown argues that the only evidence of a physical act

was Smith's single punch. Brown further argues that the single punch cannot serve as the basis for both the aggravated battery and the force element for the robbery.

¶ 16    The State responds that Smith committed two separate acts. The State asserts that the punch was one act and the taking of the deposit bags was a separate act. The State argues that the common act of the punch can serve as the basis of both offenses because there was another separate act for the robbery.

¶ 17    After remand by the supreme court, we allowed the parties to file supplemental briefs. Both parties maintain that their original arguments are supported by *Coats*.

¶ 18    As a threshold matter, Brown acknowledges that he forfeited this issue for appeal because he failed to object to the multiple convictions at trial and did not raise the issue in his posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). The parties agree, however, that our supreme court repeatedly has found a one-act, one-crime violation reviewable under the second prong of the plain error doctrine, as it affects the integrity of the judicial process. *In re Samantha V.*, 234 Ill. 2d 359, 378-79 (2009). So we will consider the issue.

¶ 19    Whether a conviction should be vacated under the one-act, one-crime rule presents a question of law, which we review *de novo*. *People v. Johnson*, 237 Ill. 2d 81, 97 (2010). Under this rule, Brown cannot be convicted of multiple offenses that are based on precisely the same single physical act, and where convicted of two offenses, the conviction for the less serious offense must be vacated. *Id.* The supreme court has defined an "act" as "any overt or outward manifestation which will support a different offense." *People v. King*, 66 Ill. 2d 551, 566 (1977).

¶ 20    In clarifying *King*'s one-act, one-crime rule, the supreme court explained that a court must first determine whether the defendant's conduct consisted of a single physical act or separate acts. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). A defendant can be convicted of two offenses where a common act is part of both crimes. *Id.* at 188. But where two offenses share a common act, there must be another separate act to sustain the two convictions. See *id.* at 188-89. " 'As long as there are multiple acts *as defined in King*, their interrelationship does not preclude multiple convictions ***.' (Emphasis added.)" *Id.* at 189 (quoting *People v. Myers*, 85 Ill. 2d 281, 288 (1981)).

¶ 21    The State charged Brown with robbery for taking money from Burtner by the use of force or by threatening the imminent use of force. 720 ILCS 5/18-1(a) (West 2008). The aggravated battery of a senior citizen offense alleged that defendants intentionally and knowingly caused great bodily harm to Burtner, a person of 60 or more years of age, by striking him about the body, causing injuries. *Id.* § 12-4.6(a).

¶ 22    The evidence presented at trial demonstrates that defendants committed one single physical act—a single punch by codefendant Smith to Burtner's left side. The only evidence of any act by defendants was Esposito's testimony that Burtner told her that he was punched in his left side and the State's stipulation that Burtner told a paramedic that "he was hit from behind, and fell." This single punch became the basis for the aggravated battery conviction and an element of force for the robbery conviction. There was no other evidence of defendants' use of force or threat of force. There was no evidence of a verbal threat. Indeed, as Burtner was punched from behind, he likely had no awareness of Smith approaching him. Based on this record, we find that defendants committed only one single physical act.

¶ 23 The State asserts that the taking of the money constituted a separate physical act for the robbery and, thus, the two convictions should stand. The State primarily relies on *People v. Pearson*, 331 Ill. App. 3d 312 (2002), which it claims is directly on point. In *Pearson*, the defendant grabbed a woman's purse off her shoulder. *Id.* at 314. A struggle ensued, knocking the woman to the ground. *Id.* The defendant was convicted of both robbery and aggravated battery. *Id.* at 316. On appeal, this court found that the two convictions did not violate the one-act, one-crime rule because the defendant committed two separate physical acts—he took the woman's purse, and he then pushed her to the ground. *Id.* at 322.

¶ 24 We find those facts distinguishable. In *Pearson*, the act of grabbing the woman's purse off her shoulder was, in and of itself, a taking of property by force. Pearson's subsequent act of pushing the woman to the ground was a separate act. Here, the evidence demonstrates that defendants committed only one physical act, Smith's punch. No evidence indicates that defendants used another act of force to take the money from Burtner. No evidence explains how the taking occurred. No evidence shows a struggle over the deposit bags or that defendants forcefully removed them from Burtner's hand. It is possible that Burtner dropped the bags after he was punched and fell to the ground, as he apparently did with the cigar box. Consequently, *Pearson* does not apply.

¶ 25 Based on this record, we find that Brown's convictions for robbery and aggravated battery of a senior citizen were both grounded on the single physical act of codefendant Smith punching Burtner. The two convictions violate the one-act, one-crime rule. As the aggravated battery of a senior citizen offense is a Class 2 felony and less serious than the robbery of a senior citizen, we vacate Brown's conviction for aggravated battery of a senior citizen.

¶ 26 We find that our supreme court's opinion in *Coats* does not change our disposition. In *Coats*, the defendant was convicted of several offenses, including being an armed habitual criminal and armed violence. *Coats*, 2018 IL 121926, ¶ 1. The evidence showed that Coats held a handgun in one hand, and two bags of drugs in the other. *Id.* ¶¶ 3-4. On appeal, Coats argued that his convictions for being an armed habitual criminal and armed violence violated the one-act, one-crime rule because they were both predicated on the same physical act of possessing the handgun. *Id.* ¶ 14. Although the two offenses shared the common act of possession of the handgun, the supreme court found that the armed violence conviction involved a second, separate act: possession of the drugs. *Id.* ¶ 17. The court further found that since possession of the handgun was only part of the conduct that formed the basis for the armed violence conviction, the two offenses were not carved from precisely the same physical act. *Id.* Thus, the court concluded that the two acts did not violate the one-act, one-crime rule. *Id.* ¶ 32.

¶ 27 In making this ruling, the supreme court rejected Coats's argument that the *King* analysis implicitly required a determination of whether the offenses shared a "crucial" act. *Id.* ¶ 18. Coats claimed that multiple convictions could not stand if the two offenses shared a common act forming the "crux" or "essence" of the crime. *Id.* In rejecting this construction of *King*, the court stated that it had never applied the one-act, one-crime rule in this manner. *Id.* ¶¶ 18-19.

¶ 28 Unlike *Coats*, the evidence here shows that the defendants committed only one physical act—Smith's single punch to Burtner's left side. None of the evidence indicates a second separate act, and none of the evidence indicates how the taking of the deposit bags occurred. In addition, we reject the State's argument, raised in its supplemental brief, that this court's analysis "implicitly hints at a 'crux' of the crime type of finding" because the force element

was crucial to both offenses. We made no "crux" or "essence" of the crime finding. Simply stated, there is no evidence of a separate physical act to support a second conviction.

¶ 29     Because we have vacated Brown's conviction for aggravated battery of a senior citizen, we need not consider his alternative argument that the conviction be reduced to aggravated battery on a public way.

¶ 30     We vacate the aggravated battery of a senior citizen conviction and affirm Brown's conviction and sentence for robbery of a senior citizen.

¶ 31     Affirmed in part and vacated in part.